**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RONALD F. RAY, Individually and On Behalf of All Others Similarly Situated, <br><br>                 Plaintiff, <br><br>     v. <br><br> STONECO LTD., THIAGO DOS SANTOS PIAU, LIA MACHADO DE MATOS, RAFAEL MARTINS PEREIRA, and MARCELO BASTIANELLO BALDIN, <br><br>                 Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br><br> **<u>JURY TRIAL DEMANDED</u>** |

Ronald F. Ray ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by StoneCo Ltd., ("StoneCo" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by StoneCo; and (c) review of other publicly available information concerning StoneCo.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired StoneCo securities between March 11, 2021 and November 16, 2021, inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      StoneCo is a provider of financial technology solutions.  StoneCo's services allow merchants and other vendors to conduct electronic commerce across in-store, online, and mobile channels, primarily in Brazil.

3.      On August 30, 2021, after the market closed, StoneCo announced its second quarter 2021 financial results in a press release, reporting an 8.1% year-over-year decrease in revenue "mainly due to adjustments in credit fair value and significantly lower credit disbursements."  The Company stated that it had "implemented some prudent actions, like temporarily stopping the disbursement of credit and increasing coverage for potential future losses, which impacted [StoneCo's] reported results for the quarter."

4.      On this news, the Company's share price fell $2.96, to close at $46.54 per share on August 31, 2021, on unusually heavy trading volume.

5.      Then, on October 26, 2021, PAX Global Technology Ltd's Florida offices were raided by the U.S. Federal Bureau of Investigation, the Department of Homeland Security, and several other agencies as part of a federal investigation. As a *Viceroy Research* report on October 27, 2021 pointed out, Stone states that PAX "is no longer [its] sole provider of POS services, [but the Company is] still substantially dependent on it to manufacture and assemble a substantial amount of [its] POS devices." Moreover, another company replaced its PAX terminals "because it did not receive satisfactory answers from PAX regarding its POS devices connecting to websites not listed in their supplied documentation."

6.      On this news, the Company's share price fell $2.64, or 7%, to close at $33.81 per share on October 27, 2021, thereby injuring investors further.

7.      Then, on November 16, 2021, StoneCo announced that it would "start retesting our original [credit] product, which is short-term loans, between the fourth quarter of '21 and the first quarter of '22." The Company could not provide specific guidance about when credit volumes would return to levels before StoneCo had halted origination of credit.

8.      On this news, the Company's share price fell $10.96, or 34%, to close at $20.70 per share on November 17, 2021, thereby injuring investors further.

9.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that StoneCo was experiencing difficulties in implementing its credit product; (2) that StoneCo faced significant risks via its point-of-sale vendor, PAX Global Technology Ltd.; (3) that, as a result of

the foregoing, the Company's financial results would be adversely impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.     Ronald F. Ray, as set forth in the accompanying certification, incorporated by reference herein, purchased StoneCo securities during the Class Period, and suffered damages as

a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant StoneCo is incorporated under the laws of the Cayman Islands with its head office located in Georgetown, Cayman Islands.  StoneCo's common stock trades on the NASDAQ Stock Market ("NASDAQ") under the symbol "STNE."

17.     Defendant Thiago Dos Santos Piau ("Piau") was the Chief Executive Officer ("CEO") of StoneCo at all relevant times.

18.     Defendant Lia Machado de Matos ("Matos") was the Chief Operating Officer ("COO") and Chief Strategy Officer of StoneCo at all relevant times.

19.     Defendant Rafael Martins Pereira ("Pereira") was the Vice President of Finance and Investor Relations Officer of StoneCo at all relevant times.

20.     Defendant Marcelo Bastianello Baldin ("Baldin") was the Vice President of Finance of StoneCo at all relevant times.

21.     Defendants Piau, Matos, Pereira and Baldin (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from the public, and that the positive representations which were being made

4

were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

22.     StoneCo is a provider of financial technology solutions.  StoneCo's services allow merchants and other vendors to conduct electronic commerce across in-store, online, and mobile channels, primarily in Brazil.  Starting in 2019, StoneCo expanded its offerings to include credit solutions to its customers.

### Materially False and Misleading
### Statements Issued During the Class Period

23.     The Class Period begins on March 11, 2021.  On that day, after the market closed, StoneCo announced its fourth quarter and Fiscal Year 2020 financial results in a press release that stated, in relevant part:[1]

**Operating and Financial Highlights 4Q20**

- Total Payment Volume (TPV), R$ 64.6 BN, Up 60.1% year over year

- Total Revenue and Income, R$ 1.0 BN, An increase of 27.9% year over year, despite lower key accounts revenue.

- Net Income, R$ 306.1 MM, Up 16.0% over year

- Adjusted Free Cash Flow, R$ 345.9 MM, 86.0% higher year over year

**Operating and Financial Highlights 2020**

- Total Payment Volume (TPV), R$ 209.9 BN, Up 62.6% year over year

- Total Revenue and Income, R$ 3.32 BN, An increase of 28.9% year over year, despite COVID-19 impact

- Net Income, R$ 837.4 MM, Up 4.1% year over year, despite COVID

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

- Adjusted Free Cash Flow, R$ 653.5 MM, 57.3% higher year over year

24.     In the March 11, 2021 press release, Defendants stated that they expected StoneCo's finances, business, operations and prospects to continue to flourish in 2021, specifically:

> In 2021, we expect to accelerate our growth while investing heavily in our business to build the capabilities we need to explore long-term opportunities. Please see below some expectations we currently have for 2021:
>
> - We expect to cross the mark of 1 million active clients in payments (ex-TON)
>
> - We also expect strong growth rates in TON
>
> - Take rate is expected to go up along 2021
>
> - Total Revenue and Income is expected to have significant acceleration from 2020 growth level
>
> - We expect to grow our salesforce and technology teams by at least 60% in 2021
>
> - Adjusted Net Margin is expected to be at similar levels compared to 2020
>
> - We expect effective tax rate to be at similar levels as in 2020
>
> ***Our banking and credit products have been gaining traction as we provide clients with seamless solutions that simplify their financial management and eliminate bureaucracy***. As a result, 34% of our acquiring clients already use more than one financial solution that we offer, compared to 27% in the previous quarter and 10% in 2019, leading to higher revenue per client and lower churn. Also, 5.3% of our SMB payment clients are already considered heavy users. This type of client provides a significantly better unit economics compared to a regular acquiring only client, as they perceive our unified value proposition. As an example, revenue for a heavy user client is 2.6x that of a regular payments-only client.
>
> *        *        *
>
> ***On credit, our differentiated solution allowed us to keep growing our outstanding balance at a strong pace while constantly improving our scoring model and risk management tools.*** In the fourth quarter, our outstanding balance grew 39% sequentially reaching R$1,514 million, with 88,900 clients currently using their pre-approved balances.

6

\*       \*       \*

***The economics of our credit solution have continued to be strong, with healthy risk-return levels.*** The product has been presenting an ROA2 ranging from 2.0% to 2.5%, risk-adjusted-return, or RAR3, from 2.1% to 2.6% and risk-adjusted return after funding costs4 from 1.6% to 2.1% per month. ***We also started to raise third-party funding for our credit product through a FIDC, raising a total of R$493 million on our first issuance, despite having a much higher demand. This is only the first step in reducing our risk exposure and we will continue to look for new issuances and alternatives to use third-party capital to fund the growth of our credit solution. At this moment, we are on track to raise additional funds through the first half of 2021.***

25.     On June 1, 2021, after the market closed, Defendants announced StoneCo's first

quarter 2021 financial results, stating an overall positive outlook in a press release:

> Total Revenue and Income was R$867.7 million, an increase of 21.1% compared to the first quarter of 2020 and our Adjusted Net Income was R$187.4 million, a 15.5% year over year growth. Consolidated TPV grew 35.5% to R$51.0 billion[.]

For 2021:

- We expect to report between 1.4 million and 1.5 million active clients in payments, including TON;

- Total Active Payment Clients excluding TON of approximately 950,000;

- Take Rate (ex-Coronavoucher) between 1.85% and 2.00% for the full year;

- Total Revenue and Income is expected to have significant acceleration from 2020 growth level

26.     Defendants also stated in the June 1, 2021 press release that although income had

only increased by a small percentage due to higher provisions for delinquencies in StoneCo's

credit operations, Defendants reassured investors that StoneCo's outlook remained positive and

that the higher provisions in credit delinquency were "expected" due to commerce restrictions

associated with COVID-19.  Specifically, Defendants stated:

> ***We continue to see higher traction of clients in our ABC Platform, with the percentage of Heavy Users (those who are active in payments, credit and banking at the same time) reaching 7.7% and the percentage of our payments***

*SMB clients in the hubs that are active either in credit or banking reaching 41% in the first quarter of 2021, compared to 34% in the previous quarter.*

In terms of financial results in our core SMB operation, we had a negative impact of R$115.8 million in the quarter due to R$109.7 million in higher provisions from our credit solution and R$6.1 million in temporary financial incentives to clients. This has resulted in a decrease in the take rate of our SMB operation from 2.20% in the first quarter of 2020 to 1.87% in the first quarter of 2021. Excluding these effects, we believe our SMB operation's take rate would have been 2.22%. *Higher provisions for expected delinquency in our credit operations were influenced by more commerce restrictions in Brazil in the first quarter of 2021 amid a second wave of COVID. Despite such higher provisions, our credit portfolio grew and remains healthy, reaching a risk-adjusted-return ("RAR") net of funding costs between 1.5% and 1.9% on a monthly basis. Also, we continue to evolve in our strategy to fund our product with third-party capital and thus limit our exposure to credit risk. As of the second quarter of 2021, we have concluded another issuance of FIDC, raising R$ 340 million in third-party capital. In total, we currently have R$833 million in third-party funding available for our credit operation.*

*On credit, we have been improving our credit scoring model and given the volatility in commerce activity as a result of the pandemic, we have decided to increase provisions for expected losses, which has impacted negatively our results in the first quarter of 2021.* Despite that, we believe the COVID crisis has demonstrated the resiliency of our credit business, as we continue to see our portfolio risk-adjusted return (RAR) between 2.1% and 2.5% per month and RAR net of Cost of Funds between 1.5% and 1.9% per month, with average weighted life of 9 months and improving cohorts of clients to date. The number of clients with credit increased to 102,300 from 88,900 in the previous quarter, with credit portfolio increasing to R$1,901 million from R$1,514 million in the fourth quarter of 2020. Also, the proportion of our portfolio being funded with third-party capital has increased from approximately 4% in the fourth quarter of 2020 to approximately 17% in the first quarter of 2021, in line with our strategy to reduce our credit exposure. On May 28, 2021, we have concluded an additional funding raise of R$400 million through a FIDC, of which R$340 million is being funded by third-party capital (85% of total) and R$60 million being funded by our own capital. Overall, we currently have R$833 million of third-party capital to fund our credit operations.

27.    The above statements identified in ¶¶ 23-26 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that StoneCo was experiencing difficulties in implementing its credit product; (2) that StoneCo faced

significant risks via its point-of-sale vendor, PAX Global Technology Ltd.; (3) that, as a result of the foregoing, the Company's financial results would be adversely impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

28.    The truth began to emerge on August 30, 2021, after the market closed, when StoneCo reported "mixed results" for second quarter 2021 "***primarily driven by a challenging short-term scenario in our credit product***" and that **total revenue and income had decreased by "8.1% year over year, explained by R\$ 397.2 million negative revenue contribution from credit**, mainly due to adjustments in credit fair value and significantly lower credit disbursements." Defendants disclosed that "[g]iven the short-term headwinds in credit … we are suspending our previous Take Rate and Adjusted Net Margin outlooks for 2021." The press release further stated:

> Our credit business remains in the early stages and *we made some mistakes in our execution, especially not foreseeing how the malfunctioning of the registry system could harm our business.* So we decided to take a cautious approach and implemented some prudent actions, like temporarily stopping the disbursement of credit and increasing coverage for potential future losses, which impacted our reported results for the quarter. While conservative, we think this was the best course of action to try to deal with the issue head-on. We will wait for the system to be fixed, all parties to begin playing by the same rules and turnaround our execution before resuming our operations, which we think could take three to six months. We have learned a lot in the past two years of building our credit product and we remain very excited about the long-term opportunity and the material benefits to our clients.
>
> \*       \*       \*
>
> . . . *Although we recognize that our underwriting capabilities and collection process still have to evolve given the early stage of our credit solution, we believe that the malfunctioning of the providers of registry of receivables services has played an important role in the poorer-than-expected results*, as it has enabled merchants to shift transactions to other acquiring services that in practice by-passed the collateral guarantees they had given to us. The demand from merchants, especially those more affected by lockdowns, to by-pass the

"lock" of receivables met the supply of temporary alternatives by opportunistic acquirers and sub-acquirers in the market.

29.     In the August 30, 2021 press release, Defendants reassured investors that they expected Brazil's new registry system to be fixed, and "all parties to begin playing by the same rules" in just three to six months.  Defendants further reassured investors that they had taken "cautious" measures to address the problems with StoneCo's credit product, as follows:

> (i)     ***temporarily stop disbursing credit:*** disbursements in the second quarter of 2021 were R$376.2 million vs. R$752.7 million in the first quarter of 2021, with R$59.8 million disbursed in June 2021 and R$0.8 million in July (representing disbursements to test the registry system);

> (ii)    make a significant downward adjustment in the fair value of our portfolio, which increases coverage for potential losses, as we perceived a potential deterioration in the quality of the guarantees; and

> (iii)   adapt the way we report credit metrics, so we can be closer to market standards and facilitate the understanding of our credit business by investors.

30.     Defendants also reassured investors about the in the August 30, 2021 press release that:

> We have learned a lot in the past two years of building our credit product and we remain very excited about the long-term opportunity and the material benefits to our clients …. We have experienced an impressive amount of learnings that we will use as fuel to boost the construction of what we envision as being a much better credit solution aimed at serving merchants better …. ***We will continue to refine our products and capabilities, improve our recovery processes and credit renegotiations, optimize rates and availability of credit, better connect our product experience with our hub strategy, and enhance usage of data.***

31.     On this news, the Company's share price fell $2.96, to close at $46.54 per share on August 31, 2021, on unusually heavy trading volume.

32.     The above statements identified in ¶¶ 28-30 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business,

operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) that StoneCo was experiencing difficulties in implementing its credit product; (2) that StoneCo faced significant risks via its point-of-sale vendor, PAX Global Technology Ltd.; (3) that, as a result of the foregoing, the Company's financial results would be adversely impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

33.     Then, on October 26, 2021, PAX Global Technology Ltd's Florida offices were raided by the U.S. Federal Bureau of Investigation, the Department of Homeland Security, and several other agencies as part of a federal investigation. As a *Viceroy Research* report on October 27, 2021 pointed out, Stone states that PAX "is no longer [its] sole provider of POS services, [but the Company is] still substantially dependent on it to manufacture and assemble a substantial amount of [its] POS devices."

34.     Moreover, according to a *Bloomberg* article published on October 27, 2021, another company replaced its PAX terminals "because it did not receive satisfactory answers from PAX regarding its POS devices connecting to websites not listed in their supplied documentation."

35.     On this news, the Company's share price fell $2.64, or 7%, to close at $33.81 per share on October 27, 2021, thereby injuring investors further.

36.     Then, on November 16, 2021, StoneCo announced its third quarter 2021 financial results. During the call, an analyst asked about the "expected timeline to restart credit origination, how the integration with the registry of receivables is going, and when we might start to see some operating leverage in the credit business." StoneCo's Chief Strategy Officer responded that the Company "expect[s] to start retesting our original product, which is short-

term loans, between the fourth quarter of '21 and the first quarter of '22." Moreover, when asked when the credit volume would return to levels "that we saw prior to halting the origination of credit," Defendant Piau replied that StoneCo is "not ready to provide a specific guidance in terms of scaling the credit" but that the Company is "near executing the credit" and "expect[s] to start disbursing this quarter."

37.     On this news, the Company's share price fell $10.96, or 34%, to close at $20.70 per share on November 17, 2021, thereby injuring investors further.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired StoneCo securities between March 11, 2021 and November 16, 2021, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, StoneCo's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of StoneCo shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by StoneCo or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

42.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of StoneCo; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

44.     The market for StoneCo's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures

to disclose, StoneCo's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired StoneCo's securities relying upon the integrity of the market price of the Company's securities and market information relating to StoneCo, and have been damaged thereby.

45.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of StoneCo's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about StoneCo's business, operations, and prospects as alleged herein.

46.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about StoneCo's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

47.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

48.     During the Class Period, Plaintiff and the Class purchased StoneCo's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

49.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding StoneCo, their control over, and/or receipt and/or modification of StoneCo's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning StoneCo, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

50.     The market for StoneCo's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to

disclose, StoneCo's securities traded at artificially inflated prices during the Class Period.  On March 11, 2021, the Company's share price closed at a Class Period high of $76.41 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of StoneCo's securities and market information relating to StoneCo, and have been damaged thereby.

51.     During the Class Period, the artificial inflation of StoneCo's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about StoneCo's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of StoneCo and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

52.     At all relevant times, the market for StoneCo's securities was an efficient market for the following reasons, among others:

(a)     StoneCo shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, StoneCo filed periodic public reports with the SEC and/or the NASDAQ;

(c)     StoneCo regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     StoneCo was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

53.     As a result of the foregoing, the market for StoneCo's securities promptly digested current information regarding StoneCo from all publicly available sources and reflected such information in StoneCo's share price. Under these circumstances, all purchasers of StoneCo's securities during the Class Period suffered similar injury through their purchase of StoneCo's securities at artificially inflated prices and a presumption of reliance applies.

54.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.   All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment

decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

55.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of StoneCo who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

56.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

57.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and

other members of the Class to purchase StoneCo's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

58.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for StoneCo's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

59.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about StoneCo's financial well-being and prospects, as specified herein.

60.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of StoneCo's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about StoneCo and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a

course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

61.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

62.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing StoneCo's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to

obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

63.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of StoneCo's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired StoneCo's securities during the Class Period at artificially high prices and were damaged thereby.

64.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that StoneCo was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their StoneCo securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

65.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

66.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

67.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

68.     Individual Defendants acted as controlling persons of StoneCo within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

70.     As set forth above, StoneCo and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 19, 2021

By: */s/ Gregory B. Linkh*
**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

and

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Ronald F. Ray*

**SWORN CERTIFICATION OF PLAINTIFF**
**STONECO LTD. (STNE) SECURITIES LITIGATION**

I, Ronald F. Ray, certify that:

1.   I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2.   I did not purchase the StoneCo Ltd. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.   I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.   My transactions in StoneCo Ltd. securities during the period set forth in the Complaint are as follows:

     (See attached transactions)

5.   I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.   I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.


___11/18/2021___                        *Ronald F. Ray*  _____
   Date                                            Ronald F. Ray

**Ronald F. Ray's Transactions in StoneCo Ltd. (STNE)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 3/11/2021 | Bought | 12 | $72.0200 |
| 3/11/2021 | Bought | 88 | $73.7300 |
| 3/11/2021 | Bought | 200 | $76.5900 |
| 4/5/2021 | Bought | 100 | $65.6700 |
| 5/24/2021 | Bought | 100 | $63.5700 |
| 10/15/2021 | Bought | 100 | $34.9900 |
| 10/15/2021 | Bought | 200 | $37.6200 |
| 10/15/2021 | Bought | 100 | $37.4700 |