**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re StoneCo Ltd. Securities Litigation | No. 1:21-cv-09620(GHW)(OTW) |
|  | Judge Gregory H. Woods |
|  | <u>CLASS ACTION</u> |
|  | ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>STONECO'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 3

I.      STONECO'S CREDIT PRODUCT ................................................................................. 3

II.     PLAINTIFF'S ALLEGATIONS ...................................................................................... 5

        A.      The Alleged Misstatements .................................................................................. 5

        B.      Allegations Regarding Scienter ........................................................................... 6

        C.      Allegations Regarding Plaintiff's Losses ............................................................ 6

LEGAL STANDARD ................................................................................................................... 7

ARGUMENT ................................................................................................................................ 7

I.      PLAINTIFF FAILS TO PLEAD A MATERIAL MISSTATEMENT OR
        OMISSION ...................................................................................................................... 7

        A.      The Alleged Misstatements Are Not Actionable, Materially False, Or
                Materially Misleading .......................................................................................... 8

                1.      General Statements About The Credit Product ....................................... 8

                2.      Optimistic Forward-Looking Statements Regarding The Credit
                        Product ..................................................................................................... 9

                3.      Statements Regarding Delinquency Rates And Metrics ......................... 11

                4.      Statements Regarding Due Diligence And The Scoring System ............ 12

                5.      StoneCo's Risk Disclosures ................................................................... 14

                6.      Statements Regarding POS Payments .................................................... 15

                7.      Statements Regarding StoneCo Discontinuing The Credit Product ........ 16

        B.      Plaintiff's Scheme Liability Allegations Fail .................................................... 17

III.    PLAINTIFF DOES NOT PLEAD A STRONG INFERENCE OF SCIENTER ............. 17

        A.      Allegations Regarding "Marco Polo" Are Insufficient To Plead Scienter .......... 18

        B.      The Complaint Contains No Particularized Allegations Regarding Reports
                Or Meetings Sufficient To Plead Scienter ......................................................... 20

        C.      Plaintiff Cannot Fall Back On A "Core Operations" Theory ............................. 22

IV.     PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ................................................. 23

V.      LEAVE TO AMEND WOULD BE FUTILE ............................................................... 25

CONCLUSION ........................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*In re Adient plc Sec. Litig.*,
  2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020)..................................................22

*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999)..........................................................................9

*In re Aegon N.V. Sec. Litig.*,
  2004 WL 1415973 (S.D.N.Y. June 23, 2004)..................................................8

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
  980 F. Supp. 2d 564 (S.D.N.Y. 2013)..........................................................14

*In re Barrick Gold Corp. Sec. Litig.*,
  341 F. Supp. 3d 358 (S.D.N.Y. 2018)................................................9, 10, 20

*Boca Raton Firefighters and Police Pension Fund v. Bahash*,
  506 F. App'x 32 (2d Cir. 2012) ...................................................................11

*In re Bristol Myers Squibb Co. Sec. Litig.*,
  586 F. Supp. 2d 148 (S.D.N.Y. 2008)..........................................................16

*C.D.T.S. v. UBS AG*,
  2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013)................................................13

*Central States, Se. and Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
  543 F. App'x 72 (2d Cir. 2013) ...................................................................24

*Chapman v. Mueller Water Products, Inc.*,
  466 F. Supp. 3d 382 (S.D.N.Y. 2020)..........................................................15

*City of North Miami Beach Police Officers' and Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*,
  2021 WL 212337 (S.D.N.Y. Jan. 21, 2021)...................................................21

*City of Roseville Emp. Ret. Sys. v. Nokia Corp.*,
  2011 WL 7158548 (S.D.N.Y. Sept. 6, 2011).................................................12

*Construction Laborers Pension Trust for S. Cal. v. CBS Corp.*,
  433 F. Supp. 3d 515 (S.D.N.Y. 2020)..........................................................15

*In re Coty Inc. Sec. Litig.*,
  2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016).................................................14

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)..................................................................................23

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)..................................................................18

*In re Fairway Grp. Holdings Corp. Sec. Litig.*,
    2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015)..........................................10, 11

*Finger v. Pearson PLC*,
    2019 WL 10632904 (S.D.N.Y. Sept. 16, 2019)........................................16

*Frankfurt-Trust Inv. Luxemburg AG v. United Tech. Corp.*,
    336 F. Supp. 3d 196 (S.D.N.Y. 2018)....................................................19

*Frederick v. Mechel OAO*,
    475 F. App'x 353 (2d Cir. 2012)...........................................................23

*Garber v. Legg Mason, Inc.*,
    537 F. Supp. 2d 597 (S.D.N.Y. 2008)....................................................20

*Gray v. Wesco Aircraft Holdings, Inc.*,
    454 F. Supp. 3d 366 (S.D.N.Y. 2020)..................................................9, 11

*Greco v. Qudian*,
    2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022)........................2, 7, 8, 10, 18, 20

*Hensley v. IEC Electronics Corp.*,
    2014 WL 4473373 (S.D.N.Y. Sept. 11, 2014)........................................22

*In re Initial Pub. Offering Sec. Litig.*,
    399 F. Supp. 2d 261 (S.D.N.Y. 2005)....................................................25

*Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*,
    445 F. App'x 368 (2d Cir. 2011)..........................................................20o

*In re ITT Edu. Serv., Inc. Sec. and S'holder Derivatives Litig.*,
    859 F. Supp. 2d 572 (S.D.N.Y. 2012)....................................................16

*Jackson v. Abernathy*,
    960 F.3d 94 (2d. Cir. 2020)..............................................................23, 24

*Jackson v. Halyard Health, Inc.*,
    2018 WL 1621539 (S.D.N.Y. Mar. 30, 2018)........................................22

*Janbay v. Canadian Solar, Inc.*,
    2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013)........................................20

*Kasilingam v. Tilray*,
  2021 WL 4429788 (S.D.N.Y. Sept. 27, 2021) ................................................................... 21

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012) ............................................................................................. 3

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005) ........................................................................................... 24

*In re Liberty Tax, Inc. Sec. Litig.*,
  435 F. Supp. 3d 457 (E.D.N.Y. 2020) ............................................................................ 13

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014) ............................................................................... 11

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
  518 F. Supp. 3d 772 (S.D.N.Y. 2021) ................................................................. 19, 20, 21

*In re New Energy Sys. Sec. Litig.*,
  66 F. Supp. 3d 401 (S.D.N.Y. 2014) ............................................................................... 24

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
  Commerce*, 694 F. Supp. 2d 287 (S.D.N.Y. 2010) ................................................. 2, 18, 19

*Pollio v. MF Global, Ltd.*,
  608 F. Supp. 2d 564 (S.D.N.Y. 2009) ............................................................................. 25

*In re Rockwell Med., Inc. Sec. Litig.*,
  2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ................................................................. 23

*Rombach v. Chang*,
  2002 WL 1396986 (E.D.N.Y. June 7, 2002) ...................................................................... 8

*San Leandro Medical Grp. Profit Sharing Plan v. Philip Morris*,
  75 F.3d 801 (2d Cir. 1996) ........................................................................................ 11, 20

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015) ............................................................................... 12

*In re Sanofi Sec. Litig.*,
  155 F. Supp. 3d 386 (S.D.N.Y. 2016) ............................................................................. 13

*Schaffer v. Horizon Pharma PLC*,
  2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) .................................................................... 23

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001) ............................................................................................. 20

*Scott v. General Motors Co.*,
  605 F. App'x 52 (2d Cir. 2015) ............................................................... 12

*SEC v. Rio Tinto plc*,
  41 F.4th 47 (2d Cir. 2022) ..................................................................... 17

*Slayton v. Am. Exp. Co.*,
  604 F.3d 758 (2d Cir. 2010) ............................................................... 9, 11

*Starr v. Georgeson S'holder, Inc.*,
  412 F.3d 103 (2d Cir. 2005) ................................................................. 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ....................................................................... 7, 9, 17

*Town of Davie Police Officers Ret. Sys. v. City of North Miami Beach Police*
  *Officers' and Firefighters' Ret. Plan*, 2021 WL 5142702 (2d Cir. Nov. 5, 2021) ................ 21

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011) ................................................... 3, 8, 21

*Westchester Teamsters Pension Fund v. UBS AG*,
  604 F. App'x 5 (2d Cir. 2015) ............................................................... 13

*Woodward v. Raymond James Fin., Inc.*,
  732 F. Supp. 2d 425 (S.D.N.Y. 2010) ....................................................... 8

*Woolgar v. Kingstone Co., Inc.*,
  477 F. Supp. 3d 193 (S.D.N.Y. 2020) ............................................... 13, 21, 23

## Rules / Statutes

15 U.S.C. § 78u4(b) ................................................................................. 7

Fed. R. Civ. P. 12(b)(6) .......................................................................... 1

Defendant StoneCo Ltd. ("StoneCo" or the "Company") respectfully submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the claim asserted against it under Section 10(b) of the Securities Exchange Act of 1934 in Plaintiff's Amended Complaint (the "Complaint" or "Compl.") (Dkt. 55).[1]

## PRELIMINARY STATEMENT

This case seeks to turn underwhelming business performance resulting from COVID and changing regulations into a securities violation.  StoneCo is a financial technology firm that provides clients with payment processing point-of-sale devices, such as credit card readers.  In 2019, StoneCo began offering lines of credit (the "Credit Product") to its point-of-sale device clients.  The Company's credit clients could pay back their StoneCo loans by using StoneCo's point-of-sale devices, which would remit directly to StoneCo a percentage of each payment processed on one of StoneCo's point-of-sale devices.

Plaintiff's claims arise from unparticularized allegations that, at some unspecified point in time, StoneCo adjusted the due diligence it performed for prospective Credit Product customers by (i) examining three months of their point-of-sale transaction history, where previously StoneCo had reviewed six months of payment history; and (ii) bringing in-house the performance of credit checks that previously was outsourced to a third-party vendor.  From this tenuous springboard, Plaintiff makes the improper leap that StoneCo's characterizations of its overall Credit Product and lending processes as, for instance, "conservative" or "resilient," were somehow false.  For these and the following reasons, Plaintiff's claims should be dismissed:

---

[1] The Complaint also asserts claims against Thiago dos Santos Piau, Lia Machado de Matos, Rafael Martins Pereira, Marcelo Bastianello Baldin, André Street de Aguiar, and Eduardo Cunha Monnerat Solon de Pontes (collectively, "Individual Defendants").  The Individual Defendants have not yet been served.

*First*, the Complaint fails to plead that ***any*** statements were materially false or misleading. The Complaint identifies not a single statement addressing either the length of payment history the Company examined, nor who performed the Company's credit checks.  Nor does Plaintiff allege that StoneCo misrepresented any financial statement, metric, or statistic about its Credit Product or any aspect of its business.  Rather, the Complaint relies almost exclusively on asserting that StoneCo chose inappropriate adjectives—such as "conservative" or "resilient"—to describe its Credit Product.  This is copy editing, not a fraud claim.  Such commonplace, vague one- and two-word descriptors are also textbook corporate puffery.  *See Greco v. Qudian*, 2022 WL 4226022, at *14, 19 (S.D.N.Y. Sept. 13, 2022) (Woods, J.) (statements that loan provider was "conservative" and "remained selective" "are non-actionable puffery").  In addition, projections that the Credit Product would, for instance, be a "big opportunity" are classic forward-looking statements of opinion that are routinely dismissed.

*Second*, the Complaint fails to plead scienter because Plaintiff offers no particularized facts suggesting that StoneCo was aware of contemporaneous information that contradicted its public statements.  Indeed, despite citing statements from ***ten*** confidential witnesses ("CW"s), Plaintiff fails to "provide specific instances in which Defendants received information that was contrary to their public declarations." *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010).  Rather, the CWs identify a Company database in which StoneCo allegedly maintained information about its Credit Product; reference certain reports that allegedly addressed the Credit Product; and suggest that Company executives discussed the Credit Product during certain meetings.  But none of Plaintiff's sources apparently could say what the data showed or when, who reviewed which data, what was discussed about the data, or which specific public statements this unspecified data rendered false.  In other

words, Plaintiff relies on unremarkable assertions that the Company monitored its Credit Product—it could hardly do otherwise—and demands the inference that the Company therefore *must have known* about ultimately-disclosed increased delinquency rates, and later discontinuance of the Credit Product, when it made the alleged misstatements. This failure to specify contrary information, with a healthy dose of fraud-by-hindsight, is insufficient as a matter of law to plead scienter. *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 355 (S.D.N.Y. 2011) ("Plaintiffs here supply no particularized allegations that Defendants knew or should have known that their underwriting standards were not conservative while publicly maintaining the opposite."). Notably, Plaintiff's assertion that the "statements themselves" suggest scienter would effectively eliminate the scienter element from a 10b-5 claim.

*Third*, the Complaint does not plead loss causation: None of the alleged "corrective disclosures" pleaded by Plaintiff is actually alleged to have revealed a prior falsehood. Rather, Plaintiff identifies general disclosures about disappointing Credit Product repayment rates during the pandemic—untethered to any revelation of misconduct or changes to the due diligence process—as somehow revealing fraud to the market. These allegations are not sufficient to plead loss causation.

For each of these reasons, the Complaint should be dismissed, with prejudice.

## FACTUAL BACKGROUND[2]

### I.  STONECO'S CREDIT PRODUCT

StoneCo is a financial technology company that provides, through a wholly owned subsidiary, payment processing technology to its clients, which are located primarily in Brazil.

---

[2] Without conceding that any allegations are true, this Section is based on facts alleged in the Complaint. Solely for purposes of this motion, the non-conclusory allegations in the Complaint are taken as true. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Compl. ¶ 2. Clients can rent physical "point of sale" ("POS") devices, such as credit card devices, from StoneCo to process their in-store transactions. *Id.* StoneCo typically generates revenue by charging a small percentage of each transaction executed with StoneCo's POS devices as a payment processing fee (also referred to as a Merchant Discount Rate or "MDR"). *Id.*

In 2019, StoneCo announced a pilot program for a new business operation in which it would offer lines of credit to its clients in addition to POS devices (the "Credit Product"). *Id.* ¶ 4. The Credit Product allowed businesses to borrow funds from a StoneCo subsidiary and repay those funds by remitting a percentage of each payment the customer processed via StoneCo's POS devices. *Id.* ¶ 5. The Complaint alleges that during this pilot program in 2019, StoneCo looked at a client's recurring sales for a six-month period (the "Lookback Period"), along with other factors not described in the Complaint, to determine whether to extend credit to a client. *Id.* ¶ 11. The Complaint also alleges that when the pilot program began, StoneCo used a third-party credit verification company, Money Plus, to review the six months of transactions. *Id.* ¶ 13.

Plaintiff's claims center around purported changes to these due diligence practices that StoneCo allegedly implemented as it expanded the Credit Product pilot program. Plaintiff alleges that, at some unspecified point, the Company changed the Lookback Period from six months to three months—Plaintiff alleges inconsistently that the Lookback Period changed "sometime in 2020" (*id.* ¶ 12) and also "in late 2019/early 2020" (*id.* ¶ 11).[3] The Complaint also alleges that StoneCo eventually discontinued its relationship with Money Plus and reviewed the clients' Lookback Period transactions internally. *Id.* ¶ 87. The Complaint acknowledges, however, that "StoneCo had always been involved in the review process," and the Company felt that it could

---

[3] The Complaint also alleges that at some point certain employees were using a Lookback Period of just two weeks or less (Compl. ¶ 14) but acknowledges this was contrary to StoneCo's practices and not a Company-authorized policy change (*id.*).

perform Money Plus's functions once the Company "understood the review process." *Id*. The Complaint does not allege that StoneCo lacked the resources to perform the review of the Lookback Period transactions, only that StoneCo could not do it in "real time." *Id*. ¶ 13.

In addition to these alleged changes to the due diligence process, Plaintiff asserts that StoneCo clients would sometimes inappropriately use competitor POS devices to avoid transmitting to StoneCo a percentage of each transaction toward paying back their StoneCo loans. *Id*. ¶ 17. The Complaint alleges this practice eventually contributed to delinquency rates. *Id*.

On June 7, 2021, a new regulatory framework governing the registration of receivables went into effect. *Id*. ¶ 26. The Brazilian Central Bank had originally published the rules in 2019, but had to postpone their implementation due to operational difficulties with the registration platforms. *Id*. ¶¶ 27, 120 n.16. The new registration system (the "Registry System") requires StoneCo and other lenders to register with certain authorized registries all loans collateralized with credit receivables. *Id*. After the loans are registered, the lender with priority interest in the collateral—essentially, the first issuer of guaranteed credit—is paid a percentage of each transaction executed by the borrower, regardless of which POS system the customer used. *Id*. ¶ 121. Later that month, StoneCo decided to discontinue the Credit Product, attributing the decision to issues with the Registry System and collectability concerns. *Id*. ¶¶ 127-29. As described more fully below, Plaintiff alleges that this announcement was received negatively by the market, and StoneCo's stock price fell.

## II.    PLAINTIFF'S ALLEGATIONS

### A.    The Alleged Misstatements

Plaintiff purports to assert claims on behalf of all persons who purchased or otherwise acquired StoneCo common stock between March 2, 2020 and November 16, 2021 (the "Class Period"). Compl. ¶ 1. The Complaint alleges that during this period, StoneCo made certain false

or misleading statements. Although Plaintiff purports to identify dozens of individual alleged misstatements, they fit into a few categories, none of which is actionable (as addressed *infra*):

1. General descriptions of the Credit Product (*e.g.*, *id.* ¶¶ 161, 165, 171);

2. Optimistic forward-looking statements that the Credit Product would be a "huge opportunity" (*e.g.*, *id.* ¶¶ 169, 180);

3. Statements of fact regarding delinquency rates and metrics, and that StoneCo received payments from POS devices (*e.g.*, *id.* ¶¶ 151, 157, 162);

4. Statements that StoneCo "improved" its scoring system or was being "more conservative" (*e.g.*, *id.* ¶¶ 162, 171);

5. StoneCo's disclosures regarding credit risk (*e.g.*, *id.* ¶¶ 159, 176); and

6. Statements regarding discontinuance of the Credit Product (*e.g.*, *id.* ¶¶ 183, 185).

### B. Allegations Regarding Scienter

Here, too, Plaintiff's lengthy allegations fit into just a handful of categories, none of which is sufficient to plead a violation of Rule 10b-5. *First*, Plaintiff claims that the mere fact that StoneCo spoke about the Credit Product is sufficient to infer scienter. *Id.* at 81. *Second*, the Complaint alleges the existence of certain reports and meetings addressing, in some fashion, the Credit Product (*e.g.*, *id.* ¶¶ 15, 106, 107), but without particularized allegations as to **what** information was reflected in the reports or discussed at the meetings, **when** the Company had such information, or **how** that information alerted the Company that any of its public statements were false. And *third*, the Complaint alleges in conclusory fashion that the Credit Product was a "core operation" for StoneCo. *Id.* ¶¶ 230-38.

### C. Allegations Regarding Plaintiff's Losses

Plaintiff alleges just three purported "corrective disclosures," none of which is sufficient. *First*, Plaintiff alleges the August 25, 2021 release of a "teach-in paper" regarding the new Registry System in which StoneCo announced it had stopped disbursing credit, was "seeing higher delinquencies than what we expected," and was making a downward adjustment to recovery

estimates. Compl. ¶¶ 183-85. The Company attributed this both to "problems the market has faced with the accurate registration of receivables" and "more difficult collections and considerably worse recoveries from non-performing clients." *Id.* ¶ 185. *Second*, on August 30, 2021, StoneCo disclosed that Company revenue decreased in the second quarter of 2021 and that 35% of Credit Product clients had failed to make principal payments for 60 days. *Id.* ¶¶ 187-88. *Third*, on November 16, 2021, the Company announced that the percentage of credit clients unable to make principal payments had increased to 48%. Compl. ¶ 195.

## <u>LEGAL STANDARD</u>

Securities fraud claims under Section 10(b) are subject to the heightened pleading standards of the PSLRA, which requires that a plaintiff "specify 'each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading.'" *Greco*, 2022 WL 4226022, at *6 (quoting 15 U.S.C. § 78u4(b)(1)). Moreover, "the complaint shall, with respect to each act or omission alleged to violate this Act, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). While the Court must accept as true all factual allegations, these are "[e]xacting pleading requirements," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), which Plaintiff fails to meet.

## <u>ARGUMENT</u>

## I.    PLAINTIFF FAILS TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION

Plaintiff fails to identify a single public statement that was false or misleading at the time it was made. The Complaint nowhere alleges that StoneCo made misrepresentations to the public

about the Lookback Period or the use of a third-party credit check company.[4]  Nor does Plaintiff

allege a single misrepresented financial figure or metric.  Instead, the Complaint attempts to craft

a claim by manufacturing weak links between these alleged diligence adjustments and general

descriptive statements.  This attempt fails for each category of alleged misstatements.

**A.     The Alleged Misstatements Are Not Actionable, Materially False, Or Materially Misleading**

        1.     General Statements About The Credit Product

**Statements #2, #3, #5, #8, #9, #11, #14, #18, #20, #22, #25, #27, #28.**[5]  Plaintiff alleges

that StoneCo's characterization of the Credit Product as "conservative" (**#9, #11**), "resilient" (**#5,**

**#25**), "rigorous" (**#5**), "selective" (**#16**), and under "tight control" (**#2**) were misleading because

the Credit Product ultimately experienced greater-than-expected delinquency rates.  *See, e.g.,*

Compl. ¶¶ 157, 164, 169.

        These are exactly the type of vague puffery that courts, including this one, routinely hold

inactionable.  *See, e.g., Greco,* 2022 WL 4226022, at *14, 19 (statements that loan provider was

"conservative" and "remained selective" are "non-actionable puffery"); *Wachovia,* 753 F. Supp.

2d at 354 (statements about "conservative" and "rigorous" underwriting process were puffery);

*Woodward v. Raymond James Fin., Inc.,* 732 F. Supp. 2d 425, 434-35 (S.D.N.Y. 2010) (similar).

        The same is true of statements that the Credit Product was performing "well" (**#3, #8**) or

had "healthy" risk or returns (**#14, #18, #20, #22, #27, #28**) (Compl. ¶¶ 164, 171).  *See In re*

---

[4] The Complaint refers to a March 13, 2020 analyst report that mentions the six-month Lookback Period.  Compl. ¶ 8.  But the Complaint does not allege that the Lookback Period had changed by March 13, 2020.  Further, Plaintiff cannot assert fraud against StoneCo based on an analyst report where there are no allegations that StoneCo helped generate that report.  *In re Aegon N.V. Sec. Litig.*, 2004 WL 1415973, at *15 (S.D.N.Y. June 23, 2004); *Rombach v. Chang*, 2002 WL 1396986, at *7 (E.D.N.Y. June 7, 2002), *aff'd and remanded*, 355 F.3d 164 (2d Cir. 2004).

[5] Appendix A is an appendix of the statements alleged in the Complaint to be false or misleading.  References to "**Statement #_**" refer to the numbered statements in Appendix A.

*Advanta Corp. Sec. Litig.*, 180 F.3d 525, 538 (3d Cir. 1999), *overruled on other grounds by Tellabs, Inc. v. Makor Issues & Rights*, *Ltd.*, 551 U.S. 308 (2007) (claims that "credit quality continues to be among the best in the industry" and "targeting of high quality customer prospects . . . sets us apart from other credit card issuers" were "vague and general statements of optimism").

2.     Optimistic Forward-Looking Statements Regarding The Credit Product

**Statements #3, #12, #20, #26, #27, #28, #29.** The Complaint claims optimistic forward-looking statements regarding the Credit Product were misleading: **#27** ("So our credit solution is really in the early beginning. So the opportunity is big . . ."); **#12** ("We see a huge opportunity ahead of us . . . ."); **#3** ("we will accelerate a lot, but it will be with a lot of focus on NPLs control"). These forward-looking statements are protected by the PSLRA safe harbor, are statements of opinion, and are inactionable puffery.

*First*, a forward-looking statement is inactionable if it is "identified" as such "and accompanied by meaningful cautionary language *or* is immaterial *or* the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading." *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010) (emphasis in original). Each statement in this category "projects results in the future" and is thus "plainly forward-looking." *In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 375 (S.D.N.Y. 2018) (quoting *Slayton*, 604 F.3d at 769); *see also Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 385 (S.D.N.Y. 2020) (projections of revenue, income, and earnings are forward-looking).

StoneCo's annual filings, press releases, and investor conference calls include warnings that outcomes may differ from projections, including due to the inability to execute certain

initiatives. Ex. 1[6] (StoneCo 2020 Form 20-F), at 5; Ex. 2 (StoneCo March 2, 2020 Press Release), at 22; Ex. 3 (StoneCo 1Q 2021 Earnings Call Transcript), at 2. For example, during the Company's 1Q 2021 earnings call, the Company warned that "today's discussion might include forward-looking statements" that "are not guarantees of future performance and therefore you should not put undue reliance on them," and that they are "subject to numerous risks and uncertainties that could cause actual results to differ materially from the company's expectation." Ex. 3, at 2.[7] And StoneCo's Forms 20-F for 2019 and 2020 warned that StoneCo "*may not be able to effectively manage individual or institutional credit risk*, or credit trends that can affect spending on card products *and the ability of customers and partners to pay us*, which could have a material adverse effect on our results of operations and financial condition." Ex. 4 (StoneCo 2019 Form 20-F), at 19 (emphasis added); Ex. 1 (StoneCo 2020 Form 20-F), at 10 (emphasis added). Such language warns investors about the precise risk that came to pass. *See Barrick Gold*, 341 F. Supp. 3d at 377 (cautionary language is "meaningful" where, as here, "a reasonable investor" could not have been "misled into thinking that the risk that materialized and resulted in his loss did not actually exist").

These statements are also protected by the safe harbor because Plaintiff does not allege they were "not honestly believed," nor does any omitted information render them misleading. *In re Fairway Grp. Holdings Corp. Sec. Litig.*, 2015 WL 4931357, at *17 (S.D.N.Y. Aug. 19, 2015).[8]

---

[6] All Exhibits referenced herein are Exhibits to the Declaration of Michael B. Carlinsky, filed contemporaneously. Each Exhibit is referenced and relied upon in the Complaint, and may be considered by this Court in deciding a motion to dismiss. *See Greco*, 2022 WL 4226022, at *6.

[7] Each earnings call containing statements in this category included similar language. Ex. 5 (StoneCo 4Q 2019 Earnings Call Transcript), at 2; Ex. 6 (StoneCo 1Q 2020 Earnings Call Transcript), at 2; Ex. 7 (StoneCo 4Q 2020 Earnings Call Transcript), at 2. The transcripts also direct investors to StoneCo's Forms 20-F for details regarding risks to the Company. *E.g.*, Ex. 7, at 2.

[8] "[B]ecause the safe harbor specifies an 'actual knowledge' standard for forward-looking statements, 'the scienter requirement for forward-looking statements is stricter than for statements

*Second*, these are inactionable statements of opinion. *In re Fairway*, 2015 WL 4931357, at *17 ("[E]xpressions of defendants' expectations for future growth . . . [were] statements of opinion."). Such statements are actionable only "if the defendant's opinions were both false and not honestly believed when they were made." *Id.* (internal quotations omitted). Because the Complaint does not allege the statements were either false or not honestly believed (*see infra* Section II), these statements of opinion cannot be the basis for a securities claim.

*Third*, the statements in this category are puffery because they are not sufficiently specific such that any reasonable investor would have relied on them. *San Leandro Medical Grp. Profit Sharing Plan v. Philip Morris*, 75 F.3d 801, 810–11 (2d Cir. 1996) (statements that company was "optimistic" about its earnings and "expected" to perform well were puffery).

### 3.    Statements Regarding Delinquency Rates And Metrics

**Statements #1, #3, #17, #18, #19.** Plaintiff alleges StoneCo's statements on March 2, 2020 that the Credit Product was "ruled by low delinquency rates" (**#1**) and had "low single-digit NPLs" (**#3**) were false. Compl. ¶¶ 151, 157. Critically, however, the Complaint never alleges that delinquency rates were ***not*** low or that the Company was ***not*** experiencing low single-digit NPLs as of March 2, 2020. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) ("without *contemporaneous* falsity, there can be no fraud") (emphasis in original). Absent allegations that the Company was misrepresenting these metrics, these statements must be dismissed. *See Boca Raton Firefighters and Police Pension Fund v. Bahash*, 506 F. App'x 32, 38 (2d Cir. 2012) ("[E]asily rejected" argument that defendant's "statements about its earnings were actionable, even though literally true, because they did not acknowledge the long-term

---

of current fact. Whereas liability for the latter requires a showing of either knowing falsity or recklessness, liability for the former attaches only upon proof of knowing falsity.'" *Wesco Aircraft*, 454 F. Supp. 3d at 381 (S.D.N.Y. 2020) (quoting *Slayton*, 604 F.3d at 773).

unsustainability of its business model."); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 537 (S.D.N.Y. 2015) (objective facts about business plan not false).[9]

Similarly, the Complaint alleges that certain statements regarding how StoneCo reports its performance (**#17, #18, #19**) were misleading. *See* Compl ¶ 174. As an initial matter, the Complaint fails to allege that StoneCo did not commence reporting its performance precisely the way StoneCo stated it would, and therefore how statements regarding the nature of StoneCo's performance metrics could be or were false or misleading. Specifically, the Company stated during an earnings call that it would be reporting "new operational metrics" to allow investors to better track the Company's performance. These statements have nothing to do with due diligence or purported changes to delinquency rates. Rather, in context, it is clear that the Company is discussing changes to how it will *report* the performance of the Credit Product. *See* Ex. 7 (StoneCo 4Q 2020 Earnings Call Transcript), at 20. Plaintiff does not make a single allegation that the Company reported Credit Product results in a way that was inconsistent with these representations.

4.    Statements Regarding Due Diligence And The Scoring System

**Statements #6, #10, #13, #15, #16, #23**. The Complaint also alleges statements that StoneCo "improved" or "enhanced" its "scoring system" or "scoring model" (**#6, #13, #15, #23**), "implemented a more conservative credit policy during COVID" (**#10**), and was "more selective" (**#16**) when disbursing credit were false. Compl. ¶¶ 161-62, 167, 174. *First*, these statements are likewise immaterial and inactionable corporate optimism and puffery. *See Scott v. General Motors*

---

[9] Similarly, Plaintiff fails to allege how StoneCo's statements in June 2021 that it was increasing provisions for expected losses (**#24**), or that its estimation was "influenced by" a second wave of COVID and commerce restrictions (**#22**), were false. *See City of Roseville Emp. Ret. Sys. v. Nokia Corp.*, 2011 WL 7158548, at *9 (S.D.N.Y. Sept. 6, 2011) ("Plaintiff's factual allegations do not demonstrate that the explanation offered by Nokia—namely, that the problem was not 'out of the ordinary' and that they had control of the release schedules—was inconsistent with some existing fact.").

*Co.*, 605 F. App'x 52, 54 (2d Cir. 2015) (statement that GM "believed" that "improved inventory management" would help strengthen its reputation was "an expression of mere 'corporate optimism' that was too general to cause a reasonable investor to rely upon it"); *C.D.T.S. v. UBS AG*, 2013 WL 6576031, at *1 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015) ("we have made significant improvements in the way in which we measure and manage risk care at UBS" was puffery); *In re Liberty Tax, Inc. Sec. Litig.*, 435 F. Supp. 3d 457, 467 (E.D.N.Y. 2020) (dismissing as puffery statement that defendants made "modifications and improvements to . . . internal controls in the areas of staffing, policies and procedures, and training").

*Second*, the Complaint does not allege facts establishing these statements were false. At most, the Complaint asserts that at some time within an alleged range of perhaps as much as *15 months*, StoneCo reduced its Lookback Period from six months to three months. But this is not at all contrary to statements that StoneCo was improving its credit scoring system. To start, Plaintiff fails to plead how the "scoring system" worked as a whole, including, critically, what other data StoneCo evaluated to apply that "system." Without alleging how the Lookback Period fits into the "scoring system" or StoneCo's "credit policy" *as a whole*, the Complaint cannot allege that the Company's general statements about improving its scoring system were false. *See Woolgar v. Kingstone Co., Inc.*, 477 F. Supp. 3d 193, 221 (S.D.N.Y. 2020) (dismissing claims as to statements that company "tighten[ed] certain underwriting criteria" because assertions that company "became more concerned with 'volume,' as opposed to quality" and had "ever-changing underwriting guidelines" were not "inconsistent with the challenged statements"); *see also In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 404 (S.D.N.Y. 2016) (alleged illegal marketing was not "sufficiently connected to defendants' existing disclosures to make those public statements misleading").

In fact, Plaintiff elsewhere actually pleads that StoneCo was *improving* its credit policy and scoring system, identifying "daily enhancements to [StoneCo's] algorithms" and "new talents brought in 2019." Compl. ¶ 162. Plaintiff cannot allege with particularity that statements regarding the conservative nature of StoneCo's lending, or the holistic effectiveness of its credit scoring system, were false by isolating one adjustment to a single aspect of a much grander process.

Further, any reasonable investor would expect the number of delinquent or non-collectable loans would increase as the Credit Product expanded from the pilot program to a more robust program, even if the Company were being more conservative—the greater the number of loans, the greater the incidents of non-payment. Increasing delinquencies as the Credit Product was expanding—especially during the pandemic, which had a severe economic effect in Brazil and around the globe—does not indicate fraud.

5.    StoneCo's Risk Disclosures

**Statements #4, #21.** Plaintiff also alleges that StoneCo's risk disclosures were misleading. Compl. ¶¶ 159, 176. As explained, StoneCo's filings contained robust disclosures about the risks associated with its operations, including specific disclosures regarding credit risks and customer collectability. *See supra* Section I(A)(2); *see also In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013) ("the risk disclosures could not have misled a reasonable investor into thinking that risks like the AIG suit did not exist in light of information communicated to the market about BoA's exposure to MBS litigation generally and to [] AIG specifically").

The Complaint alleges in a conclusory fashion that the warned-of risks had already materialized when they were disclosed in April 2020 and again in April 2021. But the Complaint is devoid of allegations as what credit risks had materialized and that those risks had materialized *by the time the disclosures were made*. *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *11 (S.D.N.Y. Mar. 29, 2016) (dismissing claim based on risk disclosures because events relevant to

14

the risk disclosures had not materialized at the time of the filings); *Chapman v. Mueller Water Products, Inc.*, 466 F. Supp. 3d 382, 406 n.6 (S.D.N.Y. 2020) ("Plaintiffs have not adequately alleged that the product failures did in fact result in 'lost revenue, significant warranty and other expenses, and harm to our reputation' at the time of these statements and before the two warranty charges, or that Defendants knew that these risks had materialized.").

Indeed, the Complaint does not allege what internal figures or information would have reflected that materialization, or when or how anyone whose knowledge could be imputed to the Company would have known.  *See infra* Section II; *see also Constr. Laborers Pension Trust for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 536 (S.D.N.Y. 2020) (where defendants were not aware that risks had materialized, risk disclosures were inactionable); *Chapman*, 466 F. Supp. 3d at 406 n.6 (S.D.N.Y. 2020) (same).

Rather, StoneCo disclosed the higher rates of non-payment as they developed later in 2021. Compl. ¶¶ 178, 187-88, 195.  Plaintiff effectively seeks to hold StoneCo liable for securities fraud because ***some*** credit customers were delinquent—meaning, according to Plaintiff, that the risk had "materialized"—despite the inevitability of some level of default and the Company's robust credit risk disclosures.  That is not the law.

6.    Statements Regarding POS Payments

**Statement #7.**  The Complaint also claims that a May 2020 description of StoneCo's use of POS devices in connection with the Credit Product was misleading.  Compl. ¶¶ 161-62 ("the deduction of a percentage of clients' daily processed volumes provide both alignment of our interests with theirs and protection for us, as we receive down payments immediately when they engage in electronic transactions, regardless of their payment provider").  The Complaint alleges that this statement was incomplete or misleading because borrowers were using other companies' POS devices so they could avoid repaying their credit from StoneCo.  But the requirement to be

complete and accurate "does not mean that by revealing one fact . . . one must reveal all others that, too, would be interesting." *Finger v. Pearson PLC*, 2019 WL 10632904, at *11 (S.D.N.Y. Sept. 16, 2019) (quoting *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 160 (S.D.N.Y. 2008)). The statement identified by Plaintiff makes no representation about the rate at which customers are using StoneCo's devices compared to competitor devices, and no reasonable investor would perceive it to be making any such representation. *See id.*; *see also In re ITT Edu. Serv., Inc. Sec. and S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012) ("these statements are not misleading because they do not suggest that the undisclosed improper activity alleged by Plaintiff was not occurring").

In any event, the Complaint is devoid of specific allegations as to when this supposed trend of resorting to other companies' POS devices even began; when, if ever, it rose to the level of causing a material increase in non-payment; or how the Company would have become aware of that circumstance. Without allegations that this information was material and known at the time of the May 2020 statement, this statement cannot sustain a securities claim.

7.    Statements Regarding StoneCo Discontinuing The Credit Product

**Statement #30, #31, #32, #33, #34, #35.** In August 2021, StoneCo disclosed that it had stopped disbursing credit, partly in response to Brazil's new Registry System. *E.g.*, Compl. ¶ 190. Plaintiff alleges these statements were false because the Registry System, which became effective in June 2021, could not have been to blame for StoneCo discontinuing its credit product, because StoneCo was considering doing so "in March, April, or May of 2021." *Id.* ¶ 125.

The Complaint fails to plead with any particularity when the company actually decided to discontinue the Credit Product. Critically, the Complaint also fails to supply facts to counter the strong inference that the Company could have, and likely was, anticipating the effects of the Registry System well before it went live in June of 2021; indeed, Plaintiff alleges the Registry

16

System laws were first published in *2019. Id.* ¶ 120, n.16.

Regardless, each of StoneCo's public statements about the Registry System acknowledges that StoneCo's own underwriting capabilities and collection processes have experienced setbacks. *Id.* ¶ 185 (August 25, 2021 disclosure that StoneCo was experiencing "more difficult collections and considerably worse recoveries from non-performing clients"), ¶¶ 191-92 (August 30, 2021 disclosure from StoneCo that "we recognize that our underwriting capabilities and collection process still have to evolve" and the Company "made some mistakes in our execution"), ¶ 194 (November 16, 2021 disclosure that StoneCo experienced a "reduction of observed recovery rates in delinquent loans"). In context, StoneCo's statements regarding the Registry System were not misleading. *See Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 110 (2d Cir. 2005) (dismissing claim because plaintiff could not have been misled by omission in light of the "total mix" of available information).

### B.  Plaintiff's Scheme Liability Allegations Fail

As a fallback, the Complaint throws in the allegation that StoneCo is liable under a scheme liability theory pursuant to Rules 10b-5(a) and (c). Compl. ¶¶ 264-67. But the Complaint alleges only misstatements and, as the Second Circuit recently confirmed, "something beyond misstatements and omissions" must be alleged to plead scheme liability. *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022). Plaintiff's tagalong Rule 10b-5(a) and (c) claims therefore fail as well.

## III.  PLAINTIFF DOES NOT PLEAD A STRONG INFERENCE OF SCIENTER

The Complaint fails for the independently sufficient reason that no particularized allegations support an inference of scienter as to anyone whose intent could be imputed to the Company. Plaintiff must allege facts supporting an inference of "intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319. The inference "must be more than merely 'reasonable' or 'permissible'—it must be . . . cogent and at least as compelling as any opposing inference one

could draw from the facts alleged." *Id.* at 324. Even considered collectively, Plaintiff's scienter allegations do not meet this standard.

"The requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Because Plaintiff makes no attempt to allege motive and opportunity, the strength of the circumstantial allegations "must be correspondingly greater." *Greco*, 2022 WL 4226022, at *24.

Although the Complaint refers to meetings and reports, it fails to allege **what specific contrary information** the company supposedly knew, **when** it had that information, or **how** that information should have alerted the company that any of the public statements identified in the Complaint were supposedly false. Indeed, despite access to ten confidential witnesses, "Plaintiff[] should, but do[es] not, provide specific instances in which Defendants received information that was contrary to their public declarations." *Plumbers & Steamfitters*, 694 F. Supp. 2d at 299; *Wachovia*, 753 F. Supp. 2d at 355 ("Plaintiffs here supply no particularized allegations that Defendants knew or should have known that their underwriting standards were not conservative while publicly maintaining the opposite.").[10]

A.    Allegations Regarding "Marco Polo" Are Insufficient To Plead Scienter

The Complaint asserts that certain executives within the Company "had access to" the Company's internal operational reporting program, Marco Polo, which allegedly included information about "sales activity" and "information related to credit." Compl. ¶ 18. Marco Polo

---

[10] Plaintiff likewise fails sufficiently to plead recklessness, which requires "conscious recklessness—i.e., a state of mind approximating actual intent, and not merely a heightened form of negligence." *Greco*, 2022 WL 4226022, at *24 (internal quotations and citation omitted).

allegedly tracked the volume and value of each POS transaction. *Id.* ¶ 19. Allegations of a reporting program that tracked this transaction data are not sufficient to establish scienter.

*First*, the Complaint does not articulate what specific data was available in Marco Polo, when it became available, or how that information contradicted StoneCo's public statements. *See Frankfurt-Trust Inv. Luxemburg AG v. United Tech. Corp.*, 336 F. Supp. 3d 196, 222 (S.D.N.Y. 2018) (dismissing complaint where "[t]here are no descriptions of when these reports would have been provided to the Executive Defendants"). Nor does the Complaint allege what the data actually showed, when, or how that POS-level data would have rendered any of StoneCo's statements false. *See Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) ("the complaint fails to specify exactly what information was contained in the report or how said information 'contradicted Defendants' public statements,' as is required to show scienter"). This "'broad reference to raw data' is not sufficient." *Plumbers & Steamfitters*, 694 F. Supp. 2d at 299 (internal quotations omitted).[11]

*Second*, the Complaint fails to allege that any defendant or executive whose intent could be imputed to StoneCo even reviewed these insufficiently-pleaded reports, much less when they did so. *See San Leandro*, 75 F.3d at 812 (An "unsupported general claim of the existence of confidential company sales reports that revealed [unfavorable figures] is insufficient to survive a motion to dismiss."). The Complaint does allege that certain executives, including two Individual Defendants, "had access to" Marco Polo's "data" (Compl. ¶ 19),[12] but that is akin to alleging that

_____

[11] Although the Court need not reach this issue now, it is worth noting that the Complaint includes allegations that are demonstrably false. As just one example, Plaintiff alleges that Individual Defendants Andre Street de Aguiar and Eduardo Cunha Monnerat Solon de Pontes had access to the Marco Polo system during the Class Period. Compl. ¶ 19. That is simply incorrect.

[12] Notably, the allegation concerning access to Marco Polo is attributed to "CW 1," a sales consultant that did not begin working at StoneCo until September 2020, and is not alleged to have

because a company keeps records, all defendants should be presumed to have reviewed those records. *Greco*, 2022 WL 4226022, at *26 (scienter "cannot be inferred solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information"); *see also Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011) (finding "vague and general averments" that executives had access to "real-time customer and sales information" insufficient to demonstrate scienter).

### B.    The Complaint Contains No Particularized Allegations Regarding Reports Or Meetings Sufficient To Plead Scienter

The Complaint also refers to reports and meetings that allegedly related to Credit Product information, but fail to specify "the internal reports, who prepared them and when, how firm the numbers were or which company officers reviewed them." *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 615 (S.D.N.Y. 2008) (quoting *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001)).

**Delinquency Charts:**    The Complaint alleges that "charts showing the credit delinquencies" existed and "made it up the chain of command." Compl. ¶ 15. But the Complaint does not allege that the delinquency charts reflected rates that differed from the delinquency rates disclosed to investors. *Maloney*, 518 F. Supp. 3d at 780-81; *Barrick Gold*, 341 F. Supp. 3d at 373 (allegation that defendants had access to "expense and capital cost data" did not support an inference of scienter where plaintiffs failed to identify the specific facts contained in the data or how such facts would have contradicted defendant's statements). Plaintiff's allegations thus fail

---

worked directly with any Defendant (Compl. ¶ 56). The Complaint is devoid of any explanation as to how CW 1 could have knowledge of the data to which any Defendant had access. Plaintiff thus fails to allege that CW 1 "was in a position to know the information attributed to him or to her." *Janbay v. Canadian Solar, Inc.*, 2013 WL 1287326, at *8 (S.D.N.Y. Mar. 28, 2013).

to identify information that StoneCo had that investors did not. And any argument that StoneCo must have known that more customers than expected would ultimately be unable to repay their loans once the pandemic hit is fraud-by-hindsight and should be rejected. *See Woolgar*, 477 F. Supp. 3d at 226 ("A plaintiff may not sustain causes of action based on fraud by hindsight, i.e., by relying on allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did.") (internal quotations omitted); *see also Kasilingam v. Tilray*, 2021 WL 4429788, at *11 (S.D.N.Y. Sept. 27, 2021) ("being wrong—even embarrassingly so—is not the same as being dishonest"); *Wachovia*, 753 F. Supp. 2d at 367 (similar).

**Loss Reports:** Similarly, the Complaint alleges that StoneCo "tracked losses through weekly, monthly, quarterly, and annual reports." Compl. ¶ 238. Plaintiff alleges some loss reports were reviewed in weekly "risk team" meetings (*id.* ¶ 107) and others were reviewed with the CEO in quarterly meetings (*id.* ¶ 238). Again, the Complaint is devoid of allegations as to the contents of the loss reports, the dates on which they were prepared or reviewed, or why that data would have rendered any particular public statement misleading. *See City of North Miami Beach Police Officers' and Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *9 (S.D.N.Y. Jan. 21, 2021) (dismissing claims where specific content of reports was not alleged), *aff'd sub nom, Town of Davie Police Officers Ret. Sys. v. City of North Miami Beach Police Officers' and Firefighters' Ret. Plan*, 2021 WL 5142702 (2d Cir. Nov. 5, 2021). Plaintiff likewise fails to plead when any purported decline in the use of StoneCo POS devices or other alleged concerns would have been reflected in any particular loss report, who reviewed that particular report, or which statements that data contradicted.[13] *Maloney*, 518 F. Supp. 3d at 780.

---

[13] Also unparticularized is the Complaint's allegation, relying on "CW 10," that "there was likely a report from the Risk Credit Team to the CEO and other executives" regarding declining

**Weekly Friday Calls:**  Plaintiff alleges there were weekly calls with the "top brass" during which "problems with the credit product were brought up." Compl. ¶ 15. The Complaint does not allege what problems were discussed or when, let alone how the discussions would have alerted anyone that the company's statements regarding the Credit Product were misleading. These vague allegations of discussions about "problems" are similar to those that are routinely rejected in this Circuit. *See*, *e.g.*, *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *28 (S.D.N.Y. Apr. 2, 2020) (allegations that employees "rais[ed] the flags" about "their concerns" insufficient where specific concerns were not alleged, nor "how those concerns related to operational issues in Metals, what 'numbers' he was seeing, how those numbers failed to 'tie to the story' that Adient was publicly promoting, what that 'story' was, or how that 'story' was false or misleading"); *Jackson v. Halyard Health, Inc.*, 2018 WL 1621539, at *9 (S.D.N.Y. Mar. 30, 2018) (that "the issue" was discussed is insufficient where complaint lacks "specific allegations as to the information actually discussed at the alleged meetings"), *aff'd Jackson v. Abernathy*, 960 F.3d 94, 99 (2d. Cir. 2020); *Woolgar*, 477 F. Supp. 3d at 220 (dismissing claims that failed to allege "specific information" "discussed at the meetings, []or how such information contradicted Defendants' public statements").

**Other Meetings:**   Although there are other types of daily, twice-weekly, and other meetings mentioned in the Complaint (*e.g.* ¶ 91), not a single allegation specifies what contrary information was discussed, with whom, or how it should have alerted the Company its statements were misleading.

### C.    Plaintiff Cannot Fall Back On A "Core Operations" Theory

Plaintiff alleges the Credit Product was a "core operation" of StoneCo's business (Compl.

---

use of StoneCo's POS devices. Compl. ¶ 106. Speculation by confidential witnesses adds nothing to the scienter calculus. *See Hensley v. IEC Electronics Corp.*, 2014 WL 4473373, at *5 n.1 (S.D.N.Y. Sept. 11, 2014).

¶ 230), but such vague allegations are likewise insufficient to establish a strong inference of scienter. *First*, the Second Circuit has questioned whether the core operations doctrine even survived the PSLRA. *See In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *14 (S.D.N.Y. Mar. 30, 2018) (citing *Frederick v. Mechel OAO*, 475 F. App'x 353, 356 (2d Cir. 2012)). "[E]ven if the doctrine is still valid, it would provide little help to Plaintiff[] here" because core operations allegations "constitute supplementary but not independently sufficient means to plead scienter." *Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at *12 (S.D.N.Y. Jan. 18, 2018) (citations and quotations omitted). Second, even assuming the core operations can add to the scienter assessment, the Second Circuit has already determined that a "naked assertion" that a product is "key" is insufficient. *Abernathy*, 960 F.3d at 99. Where, as here, "there are no particularized allegations whatsoever in the [Complaint] regarding what specific portion of [StoneCo]'s business depended on [the Credit Product] . . . Plaintiff[] cannot rely on the core operations doctrine to raise an inference of scienter." *In re Rockwell*, 2018 WL 1725553, at *14.

Finally, the Complaint makes the circular argument that the statements themselves suggest scienter. Compl. at 81. If Plaintiff could plead scienter by pleading falsity, scienter would cease to be a separate element of Rule 10b-5, let alone one with an exacting pleading standard.

## IV.   PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

Plaintiff also fails to plead loss causation, the "causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). The Complaint alleges that StoneCo's stock price dropped when the Company disclosed it had discontinued the Credit Product and was revising downward its potential recovery rate in August 2021 (Compl. ¶ 208), and on two separate occasions when the Company disclosed that 35% and then 48% of credit customers had not been able to start paying back principal within six months (*id.* ¶¶ 214, 221). These allegations fail because the risks Plaintiff alleges materialized had already

been disclosed to the market.[14]  This is not a case where any "fraud" was revealed, but rather a classic case of poorer than expected performance during the pandemic.

A "misstatement or omission 'is the proximate cause of an investment loss if the risk that caused the loss was within the zone of risk *concealed* by the misrepresentations and omissions alleged by a disappointed investor.'"  *In re New Energy Sys. Sec. Litig.*, 66 F. Supp. 3d 401, 405-06 (S.D.N.Y. 2014) (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005)) (emphasis in original).  StoneCo's disclosures appropriately disclosed the risks associated with the Credit Product.  *See supra* Section I(A)(2).  As such, Plaintiff cannot allege that such risk was "concealed."  *See Lentell*, 396 F.3d at 175 (loss causation not alleged where defendant had not "concealed or misstated any risks associated with an investment in 24/7 Media or Interliant, some of which presumably caused plaintiffs' loss").

In any event, not a single one of the purported corrective disclosures "revealed" to the market that the Lookback Period had changed or that StoneCo had cut ties with Money Plus and was performing the Lookback Period review internally.[15]  This glaring disconnect between the facts allegedly concealed and the purported corrective disclosures is another pleading failure warranting dismissal.  *Central States, Se. and Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 77 (2d Cir. 2013) ("As Freddie's alleged subprime misrepresentations are never connected to the disclosures responsible for the corrective stock price decline, the subprime exposure allegations are unavailing to plead loss causation.").

Moreover, the "corrective disclosures" identified in the Complaint were statements

---

[14] Notably, in June 2021 the Company had already disclosed it was increasing its provision for expected losses (Compl. ¶ 178) and had higher provisions for expected delinquencies (*id.*).

[15] It is worth noting that the Complaint does not cite a single analyst report even mentioning these due diligence factors in response to the purported corrective disclosures.

announcing that StoneCo was revising downward its potential recovery rate from credit clients. *See* Compl. ¶¶ 208, 214, 221.  Permitting securities fraud claims based on announcements that a company had not performed as well as expected would "effectively convert the securities laws into an insurance policy for investors."  *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 261, 266-67 (S.D.N.Y. 2005) ("If downturns in stock prices based on such mundane events as failures to meet forecasts and downward revisions of forecasts were legally sufficient to constitute disclosures of securities fraud, then any investor who loses money in the stock market could sue to recover for those losses without alleging that a fraudulent scheme was ever disclosed and that the disclosure caused their losses.").  While the revisions to the expected repayment figures may have had a negative effect on stock prices, these disclosures "do[] not imply that defendants concealed a scheme" and thus do not constitute corrective disclosures. *See id.* at 266.

## V.    LEAVE TO AMEND WOULD BE FUTILE

The Complaint should be dismissed with prejudice.   Despite allegedly obtaining information from 10 former StoneCo employees, and filing a 97-page Complaint, Plaintiff falls well short of PSLRA pleading requirements.  It is therefore clear that Plaintiff would be unable to cure the Complaint's significant deficiencies with an opportunity to amend.  *See Pollio v. MF Global, Ltd.*, 608 F. Supp. 2d 564, 575 (S.D.N.Y. 2009) (dismissing claim with prejudice where "plaintiff has failed to demonstrate that any amendment could cure the Complaint's fundamental failure to adequately plead the existence of materially false statements or of scienter").

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Dated:  November 7, 2022

*/s/ Michael B. Carlinsky*
Michael B. Carlinsky
Jacob J. Waldman
Leigha Empson
Mario Gazzola
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
jacobwaldman@quinnemanuel.com
leighaempson@quinnemanuel.com
mariogazzola@quinnemanuel.com

*Attorneys for Defendant StoneCo Ltd.*