**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re StoneCo Ltd. Securities Litigation | No. 1:21-cv-09620(GHW)(OTW)<br><br>Judge Gregory H. Woods<br><br><u>CLASS ACTION</u><br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**<u>STONECO'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT...................................................................................................................................2

I.      PLAINTIFF HAS NOT ALLEGED A STRONG INFERENCE OF SCIENTER..............2

II.     PLAINTIFF HAS NOT ALLEGED A MATERIALLY FALSE STATEMENT ...............5

III.    PLAINTIFF DOES NOT PLEAD FACTS ESTABLISHING SCHEME
        LIABILITY.........................................................................................................................9

IV.     PLAINTIFF HAS NOT ALLEGED LOSS CAUSATION .............................................10

CONCLUSION..............................................................................................................................10

i

## TABLE OF AUTHORITIES

**Page**

### Cases

*In re Adient plc Sec. Litig.*,
2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ............................................................... 3

*In re Ambac Fin. Grp., Inc. Sec. Litig.*,
693 F. Supp. 2d 241 (S.D.N.Y. 2010) ...................................................................... 6

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013) ...................................................................... 9

*Central States, Se. and Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
543 F. App'x 72 (2d Cir. 2013) ............................................................................. 10

*In re CIT Grp., Inc. Sec. Litig*,
2010 WL 2365846 (S.D.N.Y. June 10, 2010) .......................................................... 8

*City of N. Miami Beach Police Officers' and Firefighters' Ret. Plan v. Nat'l Gen.
Holdings Corp.*,
2021 WL 212337 (S.D.N.Y. Jan. 21, 2021) ............................................................. 3

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014) .................................................................................. 6

*In re Dynagas LNG Partners LP Sec. Litig.*,
504 F. Supp. 3d 289 (S.D.N.Y. 2020) ..................................................................... 7

*In re Fairway Grp. Holdings Corp. Sec. Litig.*,
2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015)........................................................... 7

*Finger v. Pearson PLC*,
2019 WL 10632904 (S.D.N.Y. Sept. 16, 2019).......................................................... 9

*Frankfurt-Trust Inv. Luxemburg AG v. United Tech. Corp.*,
336 F. Supp. 3d 196 (S.D.N.Y. 2018) ..................................................................... 4

*Freudenberg v. E*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010) ..................................................................... 6

*Greco v. Qudian Inc.*,
2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022).................................................... 2, 3, 6

*In re Initial Pub. Offering Sec. Litig.*,
399 F. Supp. 2d 261 (S.D.N.Y. 2005) .................................................................... 10

*Jackson v. Abernathy*,
   960 F.3d 94 (2d. Cir. 2020) ............................................................................................... 3, 5

*Jackson v. Halyard Health, Inc.*,
   2018 WL 1621539 (S.D.N.Y. Mar. 30, 2018) ..................................................................... 3, 4

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014) ...................................................................................... 6

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
   518 F. Supp. 3d 772 (S.D.N.Y. 2021) ................................................................................. 2, 3

*N.J. Carpenters Health Fund v. Residential Cap., LLC*,
   2010 WL 1257528 (S.D.N.Y. Mar. 31. 2010) ........................................................................ 6

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
   455 F. App'x 10 (2d Cir. 2011) .............................................................................................. 5

*In re Omega Healthcare Invs., Inc. Sec. Litig.*,
   563 F. Supp. 3d 259 (S.D.N.Y. Sept. 28, 2021) ................................................................... 10

*Plumbers & Steamfitters Local 773 Pension Fund v. CIBC*,
   694 F. Supp. 2d 287 (S.D.N.Y. 2010) .................................................................................... 2

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin.*
   *Holdings Ltd.*,
   886 F. Supp. 2d 328 (S.D.N.Y. 2012) ................................................................................... 10

*In re Rockwell Med., Inc. Sec. Litig.*,
   2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ..................................................................... 4, 5

*In re Sanofi Sec. Litig.*,
   155 F. Supp. 3d 386 (S.D.N.Y. 2016) .................................................................................... 8

*Schaffer v. Horizon Pharma PLC*,
   2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) ........................................................................... 5

*Scott v. Gen. Motors Co.*,
   605 F. App'x 52 (2d Cir. 2015) .............................................................................................. 6

*SEC v. Rio Tinto, plc*,
   41 F.4th 47 (2d Cir. 2022) .................................................................................................... 10

*Solow v. Citigroup, Inc.*,
   2012 WL 1813277 (S.D.N.Y. May 18, 2012) ......................................................................... 9

*Speakes v. Taro Pharm. Indus., Ltd.*,
   2018 WL 4572987 (S.D.N.Y. Sept. 24, 2018) ........................................................................ 5

*Starr v. Georgeson S'holder, Inc.*,
    412 F.3d 103 (2d Cir. 2005) ........................................................................................ 8

*Town of Davie Police Officers Ret. Sys. v. City of North Miami Beach Police Officers'*
    *and Firefighters' Ret. Plan*,
    2021 WL 5142702 (2d Cir. Nov. 5, 2021)..................................................................... 3

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) ......................................................................... 6

*Woolgar v. Kingstone Co., Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020) ........................................................................ 7

Defendant StoneCo Ltd. ("StoneCo" or the "Company") respectfully submits this reply memorandum of law in support of its Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 68).

## PRELIMINARY STATEMENT

The Opposition confirms that Plaintiff seeks to manufacture a securities fraud claim out of general statements regarding StoneCo's Credit Product, and poorer than expected performance attributable to the pandemic and changing regulations. Plaintiff fails to plead viable causes of action for the following reasons:

*First*, the Complaint falls far short of meeting Plaintiff's burden to plead scienter with particularity—that StoneCo knew any of its statements were false when made or that anyone intended to deceive investors. The Complaint's vague allegations that, for instance, Defendants had access to "loss reports" with unspecified contents or went to meetings where "problems" were discussed are the types of allegations that courts routinely find insufficient. Indeed, neither the Amended Complaint nor the Opposition identifies a single piece of information that was contrary to StoneCo's public statements of which StoneCo was aware when it made the statement.

*Second*, none of the statements or purported omissions identified in the Complaint was materially misleading. Plaintiff cannot rely on general statements that the Credit Product was "conservative" or "resilient," and none of the other statements identified in the Complaint is actionable or alleged to have been false when made.

*Third*, the Complaint fails to plead loss causation because it nowhere alleges a revelation of any previously concealed information. Plaintiff admits that StoneCo never misreported the delinquency rates for its Credit Product, and so the later poor performance of that Credit Product did not reveal withheld information, but merely reported disappointing results, which is not enough to invoke the securities laws.

The Amended Complaint should be dismissed with prejudice.

**ARGUMENT**

## I. PLAINTIFF HAS NOT ALLEGED A STRONG INFERENCE OF SCIENTER

The Opposition underscores the Complaint's failure to allege facts that establish **what** specific information StoneCo had that was contrary to the Company's public statements, **when** the Company had it, or **how** such information should have alerted the Company that its public statements were false.  Put simply, "Plaintiff[] should, but do[es] not, provide specific instances in which Defendants received information that was contrary to their public declarations." *Plumbers & Steamfitters Local 773 Pension Fund v. CIBC*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010).  Even considered collectively, Plaintiff's vague allegations fall far short—zero times zero is still zero.

*Marco Polo:*  The Opposition argues that Marco Polo tracked the "volume of transactions" and whether a customer was using StoneCo's POS machine, which (Plaintiff claims) establishes scienter "when read in conjunction" with the eventual higher delinquency rates.  Opp. 19-20.  But the Opposition cannot identify a single piece of specific data reflected in the Marco Polo system that should have alerted the Company that any of its public statements was false, nor does Plaintiff allege StoneCo misreported delinquency rates.  "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Greco v. Qudian Inc.*, 2022 WL 4226022, at *26 (S.D.N.Y. Sept. 13, 2022); *see also Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) (no scienter absent allegations of "exactly what information was contained . . . or how said information contradicted Defendants' public statements") (internal quotations omitted).

Nor does the allegation that Marco Polo was used "throughout StoneCo" (Opp. 19)[1]

---

[1] The only CW alleging that any Individual Defendant had access to Marco Polo is not alleged to have any basis for that assertion.  Mot. 19-20, n.12.  The Opposition claims that two other CWs confirmed this allegation, but none of the cited paragraphs alleges that Defendants Street or Cunha had access to Marco Polo.  *See* Opp. 19-20, n.7 (citing Compl. ¶¶ 57, 64, 88).

plausibly allege that any Individual Defendant reviewed the data. And allegations that defendants, merely by virtue of their positions, had access to purported contrary internal information are routinely rejected. *See, e.g.*, *Greco*, 2022 WL 4226022, at *26.[2]

**Loss Reports:** Plaintiff *concedes* that StoneCo never misrepresented losses (Opp. 13), and so by definition could not have done so with intent. Regardless, the Motion established Plaintiff's failure to plead the actual *content* of the Loss Reports. Plaintiff claims these reports contained "information on losses" of three types. Opp. 21. But vagueness cannot be cured with more vagueness, and the Opposition brings Plaintiff no closer to pleading what, if any, specific information the reports reflected. *See* Mot. 21; *Maloney*, 518 F. Supp. 3d at 780; *City of N. Miami Beach Police Officers' and Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *9 (S.D.N.Y. Jan. 21, 2021) (no scienter absent allegations of the "specific information" in reports and decks).[3] Nor does the Complaint allege why the loss reports should have made StoneCo aware that its public statements were false or when such information would have been reviewed by the Individual Defendants. *See Jackson v. Halyard Health, Inc.*, 2018 WL 1621539, at *9 (S.D.N.Y. Mar. 30, 2018), *aff'd Jackson v. Abernathy*, 960 F.3d 94, 99 (2d. Cir. 2020).[4]

**Delinquency Charts:** As above, Plaintiff likewise concedes it is not alleging that

---

[2] Plaintiff argues that *Greco* is inapplicable because the credit assessments at issue in that case were outsourced, and thus defendants did not have access. Opp. 20, n.8. In fact, the credit assessments in *Greco* were outsourced **to the defendant**. Further, as in *Greco*, Plaintiff's allegation that, by virtue of their positions, Defendants had access to credit assessment data is insufficient, without more, to infer scienter. 2022 WL 4226022, at *26.

[3] *Aff'd sub nom, Town of Davie Police Officers Ret. Sys. v. City of North Miami Beach Police Officers' and Firefighters' Ret. Plan*, 2021 WL 5142702 (2d Cir. Nov. 5, 2021).

[4] CW 5's allegation that the Individual Defendants "presented the performance numbers" to "corporate" likewise includes no allegations of what the performance numbers were, the time period they covered, or who comprised "corporate." *See In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *28 (S.D.N.Y. Apr. 2, 2020). Plaintiff seeks to distinguish *Adient* by arguing that "the Complaint demonstrates that employees 'raise[e]d the flags' about 'their concerns.'" Opp. 21. But that is *precisely* the allegation that *Adient* rejected. *In re Adient*, 2020 WL 1644018, at *28.

delinquency rates disclosed to the public differed from the Company's internal delinquency charts. Rather, Plaintiff argues that "the charts included information on loosened underwriting standards." Opp. 21-22.[5]  Absent from the Complaint, however, is any allegation regarding what data the charts showed, when, or why *any* public statement made by StoneCo on *any* topic was rendered false by the information in those charts.  *See Frankfurt-Trust Inv. Luxemburg AG v. United Tech. Corp.*, 336 F. Supp. 3d 196, 222 (S.D.N.Y. 2018).

*Weekly Calls:*  The Motion made clear that certain CW recollections that "problems" with the Credit Product were addressed at meetings is insufficiently particular to plead scienter, and similar allegations are routinely dismissed.  *See* Mot. 22.  The Opposition adds only that certain weekly Friday calls establish scienter because unspecified "presentations were displayed" and there was an "open dialogue."  Opp. 22.  Highlighting these allegations only confirms Plaintiff's failure—despite the apparent assistance of several former employees—to plead with any specificity what information the "presentations" contained or the content of the "dialogue[s]," much less that they were contrary to the Company's public statements.  *Jackson*, 2018 WL 1621539, at *9 (allegation that "the issue" was discussed insufficient).

*Core Operations:*  As established in the Motion, Plaintiff fails to allege what portion of StoneCo's business depended on the Credit Product, which allegation is necessary to invoke the core operations doctrine.  *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *14 (S.D.N.Y. Mar. 30, 2018).  The Opposition calls out a statement that the Credit Product was a "200

---

[5] Plaintiff attempts to cobble together allegations to argue that—at some unspecified point—delinquency charts showed that a shorter Lookback Period was occasionally being used. Opp. 21-22.  That claim is not alleged with particularity, and Plaintiff acknowledges that this was contrary to StoneCo's practices and not a Company policy of which anyone should have been aware.  Compl. ¶ 14.  The Complaint also fails to plead how CW 3 would know what reports went up the chain to Mateus Biselli, as CW 3 was at least two levels of reporting removed from Mr. Biselli and is not alleged to have communicated or been in meetings with him.  *Id.* ¶ 58.

4

billion reais opportunity" (Opp. 22-23), which says nothing about what portion of that opportunity the Company actually realized, and certainly does not establish that the Credit Product constituted "nearly all" of StoneCo's business. *In re Rockwell*, 2018 WL 1725553, at *14. Analyst remarks that the Credit Product "could yield additional substantial revenues" or was "important" are insufficient for the same reasons.[6] *See id.* at 14-15; *see also Abernathy*, 960 F.3d at 99. In any event, core operations allegations are insufficient standing alone, *Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at *12 (S.D.N.Y. Jan. 18, 2018), and, as above, none of the other allegations creates a strong inference of scienter.[7]

## II.    PLAINTIFF HAS NOT ALLEGED A MATERIALLY FALSE STATEMENT

Because Plaintiff fails to plead scienter, the Court need not reach the issue of falsity. Nonetheless, Plaintiff's allegations are insufficient here as well. Indeed, Plaintiff does not argue that StoneCo made misrepresentations about the Lookback Period[8] or use of a third-party credit check company (see Mot. 7-8), but relies instead on much more general statements.

   ***Statements Concerning Credit Origination and Due Diligence:***[9] As the Motion argues, statements that StoneCo's Credit Product was "conservative" or "rigorous" or under "tight control"

---

[6] Plaintiff's argument that StoneCo's statements are sufficient to infer scienter (Opp. 23) would make scienter a foregone conclusion in every securities case. And the cases cited by Plaintiff all involve other strong indicia of scienter. *See, e.g.*, *Speakes v. Taro Pharm. Indus., Ltd.*, 2018 WL 4572987, at *9 (S.D.N.Y. Sept. 24, 2018) (inferring scienter in price-fixing case because defendants were involved in pricing decisions).

[7] The lack of sufficient complementary scienter allegations distinguishes this case from Plaintiff's authority. *See, e.g.*, *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 & n.3 (2d Cir. 2011) (defendants received contrary information directly from CWs).

[8] Plaintiff does not contest that StoneCo is not liable for statements by analysts. *See* Mot. 8, n.4.

[9] Mot. App. A, Statements #2, #3, #5, #6, #8, #9, #10, #11, #13, #14, #15, #16, #18, #20, #22, #23, #25, #27, #28. The Opposition lumps together several categories of statements, which StoneCo distinguishes as appropriate in this Reply. All references to numbered statements are references to Appendix A to StoneCo's Motion.

are inactionable puffery nearly identical to statements routinely dismissed in cases such as *Greco*. 2022 WL 4226022, at \*14, \*19 (statements that loan provider was "conservative" and "remained selective" are "non-actionable puffery"); *see also In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 354 (S.D.N.Y. 2011); Mot. 8-9.[10]  Plaintiff's purported distinction (Opp. 15, n.6)—that analysts reported on the Credit Product—does not make the statements themselves "sufficiently specific for an investor to reasonably rely on . . . as a guarantee of some concrete fact or outcome." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014); *see also In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 577 n.15 (S.D.N.Y. 2014) (analyst's focus on facet of business does not turn puffery into material statements).

Plaintiff argues that statements that the due diligence and scoring system were "improved" or "enhanced" were false because at some point within a 15-month period, StoneCo allegedly reduced its Lookback Period.[11]  *First*, such statements are also typical corporate puffery.  Mot. 12-13; *Scott v. Gen. Motors Co.*, 605 F. App'x 52, 54 (2d Cir. 2015) ("improved inventory management" was puffery).  But *second*, Plaintiff has not pleaded that a reduction of the Lookback Period means that the Company's overall diligence process was not "improved" or "enhanced" during this 15-month period.  The Complaint itself makes clear that StoneCo's scoring system and diligence process encompassed not only customer performance during the Lookback Period, but

---

[10] Plaintiff's authority involves much more specific facts establishing falsity of statements relating to mortgages and mortgage-backed securities. *See, e.g.*, *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 177 (S.D.N.Y. 2010) (E\*Trade allegedly described certain loans as "superprime" when they were subprime); *N.J. Carpenters Health Fund v. Residential Cap., LLC*, 2010 WL 1257528, at \*5-6 (S.D.N.Y. Mar. 31. 2010) ("widespread evidence" that company was not complying with underwriting guidelines); *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 270-71 (S.D.N.Y. 2010) (significant changes in Ambac's underwriting were approved by individual defendants).  By contrast, Plaintiff makes "no attempt to supply factual allegations regarding what Defendants knew and when they knew it." *Wachovia*, 753 F. Supp. 2d at 355.

[11] The Complaint is inconsistent, alleging the Lookback Period changed "sometime in 2020" (Compl. ¶ 12) and also "in late 2019/early 2020" (*id.* ¶ 11).

also, for instance, "daily enhancements to [StoneCo's] algorithms" and "new talents brought in 2019." Compl. ¶ 162.[12] These allegations belie CW 2's assertion that StoneCo's process considered only customer performance during the Lookback Period. Compl. ¶ 88. The lack of specificity in pleading the components of StoneCo's due diligence and scoring system—coupled with the vague-at-best description of the timing of the change to the Lookback Period—does not render any general statements about enhancing StoneCo's due diligence false or misleading. *Woolgar v. Kingstone Co., Inc.*, 477 F. Supp. 3d 193, 221 (S.D.N.Y. 2020).

***Credit Product Projections:*** Plaintiff lumps into the "credit origination" statement category certain forward-looking statements regarding the opportunity presented by the Credit Product. Plaintiff does not challenge that the specific statements identified in the Motion were forward-looking, but argues instead that *other* portions of the statements were statements of present fact. Opp. 16. The portions of the statements that were not forward-looking are addressed elsewhere in this section. The fact remains that statements projecting that the Credit Product was "a huge opportunity" (#12) are forward-looking, immaterial, and inactionable. Mot. 9-11.[13]

Plaintiff argues that these statements cannot be statements of opinion without language such as "I think" or "I believe." Opp. 17. But the context and content of these statements clearly express the speaker's opinion, even without such explicit language.[14] *See* #12 ("we see a huge opportunity"); #20 ("we are very positive"); *see also In re Fairway Grp. Holdings Corp. Sec. Litig.*, 2015 WL 4931357, at *17 (S.D.N.Y. Aug. 19, 2015) ("[A]s expressions of defendants' expectations for future growth, the challenged statements are statements of opinion.").

---

[12] CW 2 is not alleged to have had any involvement in performing due diligence or credit checks, explaining the discrepancy between CW 2's testimony and other allegations.

[13] Statements #3, #12, #20, #26, #27, #28, #29.

[14] *In re Dynagas LNG Partners LP Sec. Litig.*, 504 F. Supp. 3d 289, 315 (S.D.N.Y. 2020) (phrases like "I think" or "I believe" are not required).

***Statements Regarding Increased NPLs and Delinquency Rates:***[15]  Critically, Plaintiff admits that StoneCo *never misstated delinquency rates or rates of non-performing loans*. Opp. 13.[16]  Plaintiff's concession again means it cannot rely on StoneCo's statements that delinquency rates were low to support claims of falsity.  #1, #3, #17.  Instead, Plaintiff argues that when delinquency rates did increase, StoneCo attributed the increase to the new Registry System or to COVID.  But absent from the Complaint is any allegation that the Credit Product was *not* negatively affected by COVID or the new Registry System.  Mot. 12 n.9.  And critically, each of StoneCo's statements about the Registry System acknowledges that StoneCo's own underwriting and collection processes experienced setbacks affecting the Product's performance.  Mot. 17. Plaintiff therefore fails to plead falsity or materiality concerning the statements about the Registry System.  *See Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 110 (2d Cir. 2005).

Plaintiff also makes the leap that by discussing the metrics used to track delinquencies, StoneCo was obligated also to discuss the Lookback Period.  Opp. 13-14.  But StoneCo's disclosures about the performance metrics did not obligate it to describe for the market the due diligence process used to evaluate customers.  *See In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 404 (S.D.N.Y. 2016) (alleged illegal marketing was not "sufficiently connected to defendants' existing disclosures to make those public statements misleading").

***Duty to Disclose:***  Plaintiff falls back on the argument that StoneCo had a duty to disclose the changes to the Lookback Period, outsourcing the credit checks, and "known collectability issues."  Opp. 14-15.  The last of these assertions is belied by the fact that Plaintiff agrees that

---

[15] Statements #1, #3, #17, #18, #19, #30, #31, #32, #33, #34, #35.

[16] This distinguishes this case from *In re CIT Grp., Inc. Sec. Litig*, cited by Plaintiff, in which the defendant misrepresented the performance of loans and misstated financials.  2010 WL 2365846, at *2-3, *6-7 (S.D.N.Y. June 10, 2010).

StoneCo never misstated delinquency rates.  Opp. 13.  Regardless, it is beyond dispute that, under the securities laws, StoneCo has a duty to disclose information only when "disclosure is necessary to make prior statements not misleading" or "silence would make other statements misleading or false," and not merely when an investor might like to know something.  *Solow v. Citigroup, Inc.*, 2012 WL 1813277, at *3 (S.D.N.Y. May 18, 2012) (citation omitted).  Plaintiff has not identified a single statement closely connected enough to the alleged changes to the due diligence process to be rendered misleading by the alleged changes, whenever they occurred.[17]

*StoneCo's Risk Disclosures:*[18]  StoneCo's Forms 20-F warned that StoneCo "may not be able to effectively manage individual or institutional credit risk, or . . . the ability of customers and partners to pay us, which could have a material adverse effect on our results of operations and financial condition."  Mot. Ex. 1, Ex. 4.  Earnings calls referenced the risks disclosed in the Forms 20-F.  Mot. 10 n.7.  These allegations sufficiently warned investors of the collectability risks at issue in the Complaint.[19]  *See In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013).  The Opposition reiterates Plaintiff's conclusory allegation that the Credit Product's risks had already materialized at the time of these disclosures but fails to identify *when* ordinary delinquency rates became problematic.  Mot. 14-15.

## III.    PLAINTIFF DOES NOT PLEAD FACTS ESTABLISHING SCHEME LIABILITY

Plaintiff has not alleged manipulative conduct "beyond misstatements and omissions," as

---

[17] Similarly, Plaintiff argues that StoneCo should have disclosed that customers were using other companies' POS devices.  Opp. 14.  But not a single statement identified in the Complaint relates to the rate at which customers were using StoneCo's POS devices compared to others, and so a POS-related disclosure was nowhere necessary to make any statements not misleading.  Mot. 15-16; *Finger v. Pearson PLC*, 2019 WL 10632904, at *11 (S.D.N.Y. Sept. 16, 2019).

[18] Statements #4, #21.

[19] StoneCo's risk disclosures are not only inactionable standing alone but also provide protection for StoneCo's forward looking statements under the PSLRA Safe Harbor.  Mot. 9-11.

necessary to support scheme liability under Rules 10b-5(a) or (c). *SEC v. Rio Tinto plc*, 41 F.4th 47, 49-51 (2d Cir. 2022). Plaintiff argues the "scheme" was carried out by lowering underwriting standards "without informing investors" (Opp. 18)—precisely the alleged omission underlying Plaintiff's 10b-5(b) claim. Absent more, Plaintiff's scheme liability claim must be dismissed.

## IV.    PLAINTIFF HAS NOT ALLEGED LOSS CAUSATION

Plaintiff cannot plead loss causation through poorer-than-expected Credit Product performance (*see* Mot. 14-15), and cites no cases sustaining such allegations where a risk was previously disclosed, which would "convert the securities laws into an insurance policy for investors." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 261, 266-67 (S.D.N.Y. 2005). Further, Plaintiff cannot point to a single corrective disclosure with "a sufficient nexus to a prior misstatement such that it reveals at least part of the falsity of that misstatement." *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 338 (S.D.N.Y. 2012). Indeed, no corrective disclosure revealed anything about purported changes to the Lookback Period or credit checks. *See Central States, Se. and Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 77 (2d Cir. 2013).[20] Without such a connection, Plaintiff's allegations are insufficient.

**CONCLUSION**

For the foregoing reasons and those stated in StoneCo's Motion, the Complaint[21] should be dismissed with prejudice.

---

[20] In fact, one of the cases cited by Plaintiff found a "corrective disclosure" inadequately alleged where "the supposedly 'corrective' statements identified by plaintiffs did not reveal to the market or otherwise establish that the prior representations had been false." *In re Omega Healthcare Invs., Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 267 (S.D.N.Y. Sept. 28, 2021).

[21] Because no Individual Defendant has been served, Plaintiff's Section 20(a) claim is not yet at issue, except to the extent dismissal of Plaintiff's Section 10(b) claim necessarily results in dismissal of its Section 20(a) claim. *See* Opp. 25 (asking Court to sustain 20(a) claim).

Dated:  February 13, 2023
     New York, New York

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

*/s/ Michael B. Carlinsky*
Michael B. Carlinsky
Jacob J. Waldman
Leigha Empson
Mario Gazzola
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
jacobwaldman@quinnemanuel.com
leighaempson@quinnemanuel.com
mariogazzola@quinnemanuel.com

*Attorneys for Defendant StoneCo Ltd.*

11