**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE STONECO LTD. SECURITIES LITIGATION | Civil Action No. 1:21-cv-9620 (GHW)(OTW) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
<u>**OF PROPOSED CLASS ACTION SETTLEMENT**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND........................................................... 2

I.      PROCEDURAL HISTORY........................................................................................ 2

II.     DISCOVERY AND CLASS CERTIFICATION ............................................................. 4

III.    NEGOTIATION OF THE SETTLEMENT AND THE TERMS OF THE
        PROPOSED SETTLEMENT ...................................................................................... 5

ARGUMENT.......................................................................................................................... 6

I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED .................. 6

        A.    Standards for Preliminary Approval of a Proposed Class Action
              Settlement ....................................................................................................... 6

        B.    Rule 23(e)(2)(A): Adequate Representation.............................................. 9

        C.    Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith,
              Informed, and Arm's-Length Negotiations by Experienced Counsel ................. 10

        D.    Rule 23(e)(2)(C): The Settlement Provides Significant and Certain
              Benefits .......................................................................................................... 11

              1.    Many Risks to Recovery Remained............................................. 11

              2.    The Effective Process for Distributing Relief to the Settlement
                    Class ......................................................................................... 14

              3.    The Settlement Does Not Excessively Compensate Lead Counsel .......... 15

        E.    Rule 23(e)(2)(D): Settlement Class Members Are Treated Equitably
              Relative to One Another ................................................................................. 16

        F.    The Remaining *Grinnell* Factors Support Preliminary Approval......................... 17

II.     PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS......................... 18

III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ......................... 20

IV.     PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS .......................... 22

CONCLUSION...................................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanced Battery Tech. Inc. Sec. Litig.*,
   298 F.R.D 171 (S.D.N.Y. 2014) ......................................................................................12, 21

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
   No. 17-cv-04846, 2021 WL 345790 (E.D.N.Y. Feb. 1, 2021) ..............................................21

*Cavalieri v. Gen. Elec. Co.*,
   No. 06-cv-315, 2009 WL 2426001 (N.D.N.Y. Aug. 6, 2009)................................................18

*Christine Asia Co. Ltd. v. Yun Ma*,
   No. 15-cv-2631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................................................8

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
   No. 12-cv-01203-VEC, 2015 WL 13639234 (S.D.N.Y. Oct. 19, 2015) ................................16

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)...................................................................................8, 9, 17, 18

*City of Providence v. Aeropostale Inc.*,
   No. 11-cv-07132-CM-GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
   *aff'd sub. nom. Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015)............................11, 16

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)...................................................................................................18

*In re Deutsche Bank AG Sec. Litig.*,
   No. 1:09-cv-01714-GHW-RWL, 2020 WL 3162980 (S.D.N.Y. June 11, 2020)....................16

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .....................................................................................17, 19

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ...........................................................................................17

*Moses v. New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ..........................................................................................7, 8, 10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)..............................................................................................................20

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .............................................................................................10

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................................................11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ......................................................................................9

*In re Prothena Sec. Litig.*,
   No. 18- cv-06425, 2019 WL 6528672 (S.D.N.Y. Dec. 4, 2019) ...............................16

*Schutter v. Tarena Int'l, Inc.*,
   No. 21-CV-3502 (PKC), 2024 WL 4118465 (E.D.N.Y. Sept. 9, 2024) ...................18

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...........12

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ...................18

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...............11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................................7, 20

*Yang v. Focus Media Holding Ltd.*,
   No. 11-cv-09051-CM-GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .........6, 7

**Statutes**

15 U.S.C. §78u-4(a)(4) ....................................................................................................16

15 U.S.C. §78u-4(a)(7)(A)-(F).........................................................................................21

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................2, 7

Fed. R. Civ. P. 23(a) ........................................................................................................18

Fed. R. Civ. P. 23(a)(1).....................................................................................................19

Fed. R. Civ. P. 23(b)(3)................................................................................................18, 19

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................................20

Fed. R. Civ. P. 23(e) ...............................................................................................1, 7, 8

Fed. R. Civ. P. 23(e)(1).................................................................................................7, 20

iii

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................................................7, 20

Fed. R. Civ. P. 23(e)(2)..........................................................................................................7, 8, 9

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................................10

Fed. R. Civ. P. 23(e)(2)(C) .....................................................................................................8, 11

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................................16

Fed. R. Civ. P. 23(e)(3)................................................................................................................8

**PRELIMINARY STATEMENT**

Lead Plaintiff Indiana Public Retirement System ("Lead Plaintiff" or "INPRS"), on behalf of itself and the other members of the proposed Settlement Class (defined below),[1] submits this memorandum of law in support of its unopposed motion for preliminary approval of the proposed settlement reached in the above-captioned action (the "Action"). If approved, the Settlement will provide a recovery of $26,750,000 in cash to resolve this proposed securities class action, pending against defendant StoneCo Ltd. ("StoneCo," the "Company," or "Defendant"). The terms of the proposed Settlement are set forth in the Stipulation and Agreement of Settlement, dated as of October 15, 2025, which was entered into by Lead Plaintiff and StoneCo.

The Settlement eliminates the real risk that protracted litigation might lead to a lesser or no recovery—including significant risks relating to scienter, loss causation, and damages—and guarantees a significant and near-term recovery for the Settlement Class. The proposed Settlement was achieved after years of hard-fought litigation, motion practice, and vigorous extended arm's-length negotiations before a well-respected mediator. Lead Plaintiff—a sophisticated institutional investor—oversaw the litigation and fully endorses the Settlement. The proposed Settlement readily satisfies each of the approval factors required by Federal Rule of Civil Procedure 23(e) and Second Circuit precedent.

If the Court grants preliminary approval, Lead Plaintiff will be able to provide notice of the Settlement's terms and conditions to potential Settlement Class Members. A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and Settlement Class

---

[1] All capitalized terms used in this memorandum that are not defined have the same meanings as in the Stipulation and Agreement of Settlement, dated as of October 15, 2025 (the "Stipulation"), which is attached as Exhibit 1 to the Declaration of Michael H. Rogers ("Rogers Decl."), filed herewith.

Members may present arguments and evidence for and against the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate. The Court will also be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement and to consider Lead Counsel's Fee and Expense Application.

The proposed Preliminary Approval Order has been negotiated by the Parties and will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) preliminarily certify the Settlement Class and appoint Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel, for purposes of the Settlement only; (iii) approve the form and content of the long-form Notice, Claim Form, Postcard Notice, and Summary Notice, attached as Exhibits 1 through 4 to the Preliminary Approval Order; (iv) find that the procedures for distribution of the notices constitute the best notice practicable under the circumstances and comply with due process, Fed. R. Civ. P. 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (v) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses, including reimbursement of costs and expenses to Lead Plaintiff pursuant to the PSLRA; and (vi) appoint Verita Global, LLC ("Verita" or the "Claims Administrator"), which was selected after a competitive bidding process, to administer the Settlement process.

For the reasons discussed herein, it is respectfully requested that the Court enter the proposed Preliminary Approval Order submitted herewith (and Exhibit A to the Stipulation).

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    PROCEDURAL HISTORY

On November 19, 2021, the Action was commenced by the filing of an initial complaint in

2

the United States District Court for the Southern District of New York (the "Court") alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, on behalf of a class of all persons and entities who purchased or otherwise acquired StoneCo common stock during the class period. ECF No. 1.

After the filing of competing lead plaintiff motions and the subsequent filing of notices of non-opposition, on May 2, 2022, pursuant to the PSLRA and on consent, Magistrate Judge Ona T. Wang: (i) appointed INPRS as Lead Plaintiff; (ii) approved Labaton Sucharow LLP (n/k/a Labaton Keller Sucharow LLP) ("Labaton") as Lead Counsel; and (iii) renamed the Action *In re StoneCo Ltd. Securities Litigation*, No. 1:21-cv-09620-KPF. ECF No. 45.

Lead Plaintiff engaged in a thorough investigation of its claims for the purpose of drafting a comprehensive consolidated complaint, which included the review and analysis of: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the defendants; (iii) research reports issued by financial analysts concerning the Company; and (iv) other publicly available documents. Additionally, Lead Plaintiff, through Lead Counsel, contacted and interviewed former employees of StoneCo to discuss the issues related to the Action.

On Auguust 8, 2022, Lead Plaintiff filed the Amended Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint") asserting claims under Section 10(b) of Exchange Act and Section 20(a) against StoneCo, Thiago dos Santos Piau, Lia Machado de Matos, Rafael Martins Pereira, Marcelo Bastianello Baldin, André Street de Aguiar, and Eduardo Cunha Monnerat Solon de Pontes. ECF No. 55. The Complaint alleged that, during the Class

Period of March 2, 2020 through November 16, 2021, inclusive, the price of StoneCo common stock was artificially inflated as a result of the then-named defendants' allegedly false and misleading statements and omissions, and declined when the truth was allegedly revealed through a series of partial corrective disclosures.

On November 7, 2022, StoneCo filed a motion to dismiss the Complaint, which Lead Plaintiff opposed, and to which StoneCo replied. ECF Nos. 67-69, 73-74. On September 25, 2024, the Court entered its Opinion and Order granting, in part, and denying, in part, StoneCo's motion to dismiss ("MTD Order"). ECF No. 76. As a result of the MTD Order, the Court dismissed certain alleged misstatements, which resulted in the class period beginning on May 27, 2020.

On November 20, 2024, the parties entered into a stipulation of voluntarily dismissal as to individual defendants Thiago dos Santos Piau, Lia Machado de Matos, Rafael Martins Pereira, Marcelo Bastianello Baldin, André Street de Aguiar, and Eduardo Cunha Monnerat Solon de Pontes, dismissing them from the Action without prejudice (ECF No. 84), which was so-ordered by the Court on November 21, 2024 (ECF No. 85).

On November 27, 2024, StoneCo filed its Answer to the Complaint. ECF No. 86.

## II.    DISCOVERY AND CLASS CERTIFICATION

Following the Parties' Initial Conference before Magistrate Judge Ona T. Wang on December 18, 2024, the Court issued a Civil Case Management Plan and Scheduling Order that set a schedule requiring class certification to be fully briefed by August 4, 2025; fact discovery to close on December 19, 2025; and expert discovery to close on May 1, 2026. ECF No. 93.

Pursuant to the Court's Individual Rules, Lead Plaintiff sought leave to file its motion for class certification in accordance with the schedule set forth in the Civil Case Management Plan, which the Court granted on March 28, 2025. ECF No. 109. On April 4, 2025, Lead Plaintiff filed its motion for class certification, and for the appointment of Lead Plaintiff as Class Representative

and Lead Counsel as Class Counsel ("Class Certification Motion"). ECF Nos. 111-114.

Beginning in December 2024, the Parties engaged in formal discovery efforts, including exchanging initial disclosures, serving requests for production of documents and interrogatories, as well as subpoenas on third parties. The Parties engaged in numerous meet-and-confer conferences regarding the scope of discovery and began their production of documents, as negotiations over the scope of discovery continued. By May 2025, StoneCo produced approximately 1,520 documents (about 12,000 pages) to Lead Plaintiff, Lead Plaintiff produced approximately 700 documents (about 13,500 pages) to StoneCo, and third parties produced approximately 50 documents (about 1,200 pages). In connection with the documents produced by StoneCo, the Parties engaged in substantial translation efforts, as the Company maintained many of its documents in Portuguese.

### III.    NEGOTIATION OF THE SETTLEMENT AND THE TERMS OF THE PROPOSED SETTLEMENT

In April 2025, as fact discovery was underway, the Parties began exploring the possibility of a negotiated resolution of the Action through telephonic conferences and written correspondence, ultimately agreeing that the Parties' counsel would meet in person to discuss a potential resolution through mediation. On May 1, 2025, the Parties submitted a joint letter requesting that the Court extend the class certification briefing schedule and StoneCo's document production deadline in light of the upcoming mediation. ECF No. 116.

On June 10, 2025, counsel for the Parties participated in a full-day mediation session before David Murphy of Phillips ADR Services (the "Mediator"). In advance of that session, the Parties submitted detailed confidential mediation statements, together with numerous supporting exhibits, which addressed both liability and damages issues. The June 10, 2025 session ended without any agreement being reached. The Parties continued discussions with the Mediator to further explore

the possibility of a settlement. On June 23, 2025, the Mediator sent the Parties a mediator's recommendation for settlement, and on June 24, 2025, the Parties accepted the recommendation and reached a settlement in principle to resolve all claims in the Action on a class-wide basis for $26,750,000. The Parties' acceptance of the Mediator's recommendation took into account, among other things, the Parties' respective views on Lead Plaintiff's claims and the Parties' defenses. The Parties memorialized their agreement in a Term Sheet that was executed on August 22, 2025, subject to the execution of a formal settlement agreement, related papers, and approval by the Court.

As of October 15, 2025, the Parties executed the Stipulation. In exchange for payment of the Settlement Amount, upon the Effective Date of the Settlement, Lead Plaintiff and the Settlement Class will release the Released Plaintiffs' Claims against the Released Defendant Parties, and Defendant will release the Released Plaintiff Parties from all Released Defendant's Claims. *See* Stipulation ¶¶1(bb)-(ff), 4, and 5. The definition of Released Plaintiffs' Claims has been tailored to provide the Released Defendant Parties with "complete peace" while being limited to claims that were asserted, or could have been asserted, by the Settlement Class, arising out of both the facts and matters in the Action and the purchase or acquisition of StoneCo publicly traded common stock during the Class Period. *See* Stipulation ¶1(ff). The Settlement is not "claims-made" and there is no reversion of unclaimed funds to StoneCo. *See* Stipulation ¶12.

**ARGUMENT**

I.      **PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED**

        A.      **Standards for Preliminary Approval of a Proposed Class Action Settlement**

Public policy favors settlement of litigation. *See Yang v. Focus Media Holding Ltd.,* No. 11-cv-09051-CM-GWG, 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) ("[W]hen exercising

discretion to approve a settlement, courts are 'mindful of the strong judicial policy in favor of settlements[.]'"[2] This is especially so in securities class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the "strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."").

Rule 23 requires court approval of any settlement of a class action. A district court's review of a proposed class action settlement is a two-step process. First, the court performs a review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class.  *See* Fed. R. Civ. P. 23(e)(1). Second, after notice and a hearing, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2). A court may grant preliminary approval of a settlement upon a finding that it "will likely be able to" approve the settlement as fair, reasonable, and adequate at the final hearing, and certify the class for purposes of judgment on the proposal. *See* Fed. R. Civ. P. 23(e)(1)(B). By this motion, Lead Plaintiff requests that the Court take this first step: preliminary approval of the Settlement.

Effective December 1, 2018, Rule 23(e) was amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the *likelihood* that the court will be able to finally approve the settlement, after considering "the four factors outlined in Rule 23(e)(2) holistically." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023); *see also* Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)    class representatives and counsel have adequately represented the class;

---

[2] All internal quotations and citations are omitted, unless otherwise noted.

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3)[3]; and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Courts in the Second Circuit may also consider the factors enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), many of which overlap with the Rule 23(e) factors. *See Moses*, 79 F.4th at 243 ("Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement.").[4] Applying the standards set forth above, it is respectfully submitted that the

---

[3] Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. Here, on August 22, 2025 the Parties entered into the Term Sheet. In addition to the Stipulation, as of October 15, 2025 they entered into a confidential Supplemental Agreement Regarding Requests for Exclusion, (the "Supplemental Agreement"). Stipulation ¶41. The Supplemental Agreement sets forth the conditions under which StoneCo has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual payment. *Christine Asia Co. Ltd. v. Yun Ma*, No. 15-cv-2631, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019). Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and Term Sheet are the only agreements concerning the Settlement entered into by the Parties.

[4] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery

Settlement should be preliminarily approved. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 60 (E.D.N.Y. 2019).

### B.    Rule 23(e)(2)(A): Adequate Representation

Lead Plaintiff and Lead Counsel have adequately prosecuted this Action on behalf of the class since its inception and will continue to do so throughout the administration of the Settlement to secure and deliver its benefits to the Settlement Class. As demonstrated in its declaration in support of the Class Certification Motion filed on April 4, 2025, Lead Plaintiff INPRS, a sophisticated institutional investor, has been an active and informed participant in the litigation, regularly communicating with Lead Counsel and reviewing significant pleadings and orders. ECF No. 113-2. Faithfully executing its duties, Lead Plaintiff was engaged in each step of the litigation.

Likewise, Lead Counsel, highly experienced in securities class action litigation, diligently prosecuted the Action and considered the benefits of a resolution before agreeing to a settlement. *See* Exhibit 2 (firm profile). Lead Counsel has developed a deep understanding of the facts of the case and merits of the claims through: (i) a comprehensive investigation; (ii) engaging a damages and causation expert; (iii) defeating, in part, defendant's motion to dismiss; (iv) commencing and participating in discovery; (v) engaging consultants concerning Brazilian law; (vi) preparing the class certification motion; and (vii) engaging in arm's-length negotiations between experienced counsel. Lead Plaintiff and Lead Counsel evaluated the potential risks in the case and negotiated vigorously to secure the $26.75 million recovery. Accordingly, the Settlement Class has been, and remains, well represented.

---

in light of all the attendant risks of litigation. *City of Detroit*, 495 F.2d at 463, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

### C.    Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

"Where the proposed settlement appears to be the product of serious, informed, non–collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). An "arm's-length negotiation [is] one of two procedural factors (the other being the adequacy of class representatives and counsel) – and one of four core factors that courts must consider when approving a proposed settlement[.]" *Moses*, 79 F.4th at 243.

Here, the Settlement was achieved by Lead Plaintiff's and Lead Counsel's vigorous arm's-length negotiations with StoneCo,[5] overseen by an experienced third-party neutral mediator. During the June 10, 2025 mediation session, the Parties vigorously asserted arguments concerning Lead Plaintiff's ability to prove falsity and scienter, the relevance of outstanding discovery requests with respect to Lead Plaintiff's claims, whether documents and testimony developed in discovery would support the allegations pled in the Complaint, and significant issues pertaining to loss causation and damages. With Lead Plaintiff and StoneCo still meaningfully apart in their respective positions after the mediation, they agreed to continue negotiations through the Mediator. On June 24, 2025, the Parties accepted the Mediator's proposal and memorialized their agreement in a Term Sheet that was executed on August 22, 2025, subject to the execution of a formal settlement agreement, related papers, and approval by the Court. Accordingly, it is respectfully submitted that the Settlement readily satisfies this factor.

Additionally, Lead Counsel, which has extensive experience prosecuting complex

---

[5] During the course of the litigation, StoneCo's Counsel was Quinn Emanuel Urquhart & Sullivan, LLP.

securities class actions (*see* Exhibit 2), believes that the Settlement is not only fair, reasonable, and adequate, but is a very good result for Lead Plaintiff and the Settlement Class. This opinion is entitled to "great weight." *See City of Providence v. Aeropostale Inc.*, No. 11-cv-07132-CM-GWG, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub. nom. Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts give "great weight … to the recommendations of counsel[.]").

Finally, the settlement was also negotiated with the oversight of Lead Plaintiff, a sophisticated institutional investor with billions of dollars in assets under management for the benefit of more than 542,793 members representing 1,333 employers, including public universities, school corporations, municipalities, and state agencies throughout the state of Indiana. *See* ECF No. 113-2. This also supports the fairness of the Settlement. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'").

## D.    Rule 23(e)(2)(C): The Settlement Provides Significant and Certain Benefits

### 1.    Many Risks to Recovery Remained

Rule 23(e)(2)(C)(i) instructs courts to consider the adequacy of a proposed settlement in light of "the costs, risks, and delay of trial and appeal." To determine whether the proposed Settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement. Although Lead Plaintiff and Lead Counsel believe the claims to be strong, they acknowledge that Defendant could advance several substantial arguments that could have reduced, or altogether eliminated, any recovery for StoneCo investors. It is well known that "[s]ecurities class actions present hurdles to proving liability that

11

are particularly difficult for plaintiffs to meet." *In re Advanced Battery Tech. Inc. Sec. Litig.*, 298

F.R.D 171, 177 (S.D.N.Y. 2014); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-CV-06728-CM-

SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("Courts recognize that [s]ecurities class

actions are generally complex and expensive to prosecute.").

First, although the Court denied, in part, StoneCo's motion to dismiss, Lead Plaintiff and

the class would have faced significant hurdles at summary judgment and at trial in connection

with, among other things, ultimately proving falsity and scienter, which are necessary for their

Exchange Act claims. For example, documents produced by StoneCo in discovery suggested that,

as disclosed by StoneCo: (i) COVID-19 caused significant problems for StoneCo's Credit Product;

and (ii) the new registry laws in Brazil presented difficulties and contributed to increasing

delinquencies.  StoneCo also obtained declarations from four confidential witnesses cited in Lead

Plaintiff's Complaint that appeared to clarify, modify, or recant certain allegations attributed to

them in the Complaint in support of allegations of falsity and scienter.  Although Lead Plaintiff

had not yet had the opportunity to seek further discovery in connection with StoneCo's document

production and confidential witness declarations, they potentially would have posed difficulties

for Lead Plaintiff if the Action had proceeded.

Additionally, the difficulties of proving liability at summary judgment and trial would have

been compounded by the fact that StoneCo operates primarily in Brazil—which presents

translation issues, legal issues, and difficulties pertaining to third-party discovery. For example,

Lead Plaintiff understands that U.S. attorneys face legal restrictions in their ability to take U.S.-

style depositions in Brazil, which would require the parties to engage foreign counsel and/or

schedule depositions in neighboring countries without similar restrictions. Moreover, Lead

Plaintiff understands that third-party discovery is far more limited in Brazil as compared to the

U.S., requiring lengthy and costly intervention and/or approval from U.S. and Brazilian courts with limitations on the type and scope of discovery requests permitted.

Second, Lead Plaintiff would have to succeed on its pending Class Certification Motion. While Defendant had not yet submitted its opposition to Lead Plaintiff's Class Certification Motion, Lead Plaintiff anticipated a full opposition to the motion, likely on several grounds, including that the Class Period should be reduced significantly because of the inactionability of certain misstatements and that one or more of the corrective disclosures at issue did not cause a statistically significant price decline or reveal new information about the Credit Product.

Furthermore, even if the hurdles to establishing liability were overcome, Lead Plaintiff would have likely confronted challenges in proving loss causation and damages. In order to recover, Lead Plaintiff would need to prove that the allegedly corrective information disclosed by StoneCo on August 25, 2021, August 30, 2021, and November 16, 2021 revealed new information about StoneCo's Credit Product that caused the price StoneCo's stock to decline, as opposed to other information that was unrelated to the alleged misstatements. StoneCo may have argued, for example, that the decline on August 25 was not sufficiently statistically significant and that confounding information released during the trading day on November 17, 2021 significantly reduced recoverable damages.

Lead Plaintiff consulted with an expert in damages and loss causation who analyzed class-wide damages in light of the facts and circumstances presented in the case and developed through the discovery process to date. Lead Plaintiff's consulting damages expert estimated that maximum damages attributable to all three allegedly corrective disclosures was approximately $2 billion, depending on the trading model and assumptions used. However, if only the August 30 allegedly corrective disclosure was found to be actionable, aggregate damages would have decreased to

approximately $400 million. In addition, there were risks that the Class Period could have been shortened to start much later, in March 2021, which could have reduced aggregate damages to approximately $200 million. Accordingly, the Settlement recovers a range of approximately 1.3% of estimated maximum damages to 6.7%-13.4% of likely recoverable estimated damages, which is a favorable result. Notably, the $26.75 million recovery is more than double the median recovery of $12.5 million in securities class actions settled in the first half of 2025. *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: H1 2025 Update*, at 2 (NERA Economic Research Associates, Inc. 2025), attached as Exhibit 3 to the Rogers Declaration. Also according to NERA, after excluding merger objection cases, unregistered crypto cases, and settlements without a monetary payment to the class, in the first half of 2025, 44% of settlements had a value of less than $10 million, 31% were between $10 million and $49.9 million, and only 25% settled for $50 million or more. *See* Exhibit 3 at 2, 14,16.

Thus, the Settlement is a favorable outcome for the Settlement Class.

### 2. The Effective Process for Distributing Relief to the Settlement Class

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator, Verita Global, LLC ("Verita"). The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a Claimant will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to recover by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible Claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation ¶24. Lead Plaintiff's claim will be reviewed in the

14

same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. at ¶30(d). Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶¶26, 39) and the claims process is completed, Authorized Claimants will be issued payments. If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. If there are unclaimed funds, Lead Plaintiff designates Consumer Federation of America ("CFA") as *cy pres* beneficiary, or such other non-sectarian, not-for-profit charitable organization approved by the Court. *Id*. at ¶27.[6]

### 3.    The Settlement Does Not Excessively Compensate Lead Counsel

The reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and Litigation Expenses. The Settlement does not contemplate any specific award. Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by StoneCo. In connection with Lead Counsel's Fee

---

[6] CFA is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests through policy research, advocacy, and education. See www.consumerfed.org. With respect to victims of financial fraud, CFA has an Investor Protection program and an Investment Research Center that works nationwide to promote consumer-oriented policies that safeguard investors against fraud through: (i) the development of educational material for investors; (ii) drafting policies and legislation; (iii) and providing testimony and comments on legislation and regulations. www.consumerfed.org/issues/investor-protection. CFA has been approved in numerous securities cases, including *Chen v. Missfresh Limited, et al*., Case No. 22-cv-09836-JSR (S.D.N.Y.) and *ODS Capital LLC v. JA Solar Holdings Co. Ltd. et al*., No. 18-cv-12083 (S.D.N.Y.).

and Expense Application, Lead Counsel will seek no more than 30% of the Settlement Fund, an amount that is within the percentages that courts in the Second Circuit have approved in class actions with comparable recoveries. *See, e.g., In re Deutsche Bank AG Sec. Litig.,* No. 1:09-cv-01714-GHW-RWL, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (awarding 33 1/3% of $18.5 million settlement); *City of Providence*, 2014 WL 1883494, at *20 (awarding 33% of $15 million settlement); *In re Prothena Sec. Litig.*, No. 18- cv-06425, 2019 WL 6528672, at *2 (S.D.N.Y. Dec. 4, 2019) (awarding 30% of $15,750,000 settlement); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, No. 12-cv-01203-VEC, 2015 WL 13639234, at *4 (S.D.N.Y. Oct. 19, 2015) (awarding 30% of $33 million settlement).

Lead Counsel will also seek payment of Litigation Expenses incurred during the prosecution of the Action, including an award to Lead Plaintiff pursuant to the PSLRA, of no more than $420,000.

E.    **Rule 23(e)(2)(D): Settlement Class Members Are Treated Equitably Relative to One Another**

The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Lead Plaintiff, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[7] The proposed plan was created by Lead Plaintiff's consulting damages expert and is consistent with Lead Plaintiff's theories of damages under the Exchange Act and the Court's rulings in the case.

---

[7] Lead Plaintiff may seek reimbursement of its reasonable costs and expenses (including lost wages) directly related to its participation in the Action, pursuant to the PSLRA. This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

Settlement Class Members that were allegedly harmed as a result of the alleged fraud, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. *See, e.g.*, *In re Merrill Lynch Tyco Rsch. Sec. Litig.,* 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

F.      **The Remaining *Grinnell* Factors Support Preliminary Approval[8]**

*Grinnell* **Factor 3 (the stage of the proceedings and the amount of discovery completed):** The fact that the Parties have not completed discovery does not weigh against preliminary approval. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). As stated above, prior to agreeing to a settlement, Lead Plaintiff conducted a thorough and informed investigation, engaged in extensive motion practice including briefing on defendant's motion to dismiss and filing its motion for class certification, engaged in discovery efforts including requests for production of documents and interrogatories, consulted with a loss causation and damages expert, and participated in arm's-length settlement negotiations over the course of months. Accordingly, Lead Plaintiff and Lead Counsel entered into the Settlement fully informed about the Action's strengths and weaknesses.

*Grinnell* **Factor 7 (the ability of the defendants to withstand a greater judgment):** This factor is "typically relevant only when a settlement is less than what it might otherwise be but for

---

[8] The second *Grinnell* factor (the reaction of the class to the settlement) will be addressed in Lead Plaintiff's reply papers in connection with its motion for final approval, after notice of the Settlement is disseminated, which will address any objections and requests for exclusion.

17

the fact that the defendant's financial circumstances do not permit a greater settlement," which is not the case here. *Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC), 2024 WL 4118465, at *12 (E.D.N.Y. Sept. 9, 2024). Although it is likely StoneCo could withstand a greater judgment, "this factor, standing alone, does not suggest the settlement is unfair," especially where, as here, the "other *Grinnell* factors weigh heavily in favor of settlement." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *see also Cavalieri v. Gen. Elec. Co.*, No. 06cv315 (GLS/DRH), 2009 WL 2426001, at *2 (N.D.N.Y. Aug. 6, 2009) ("The court also notes that although neither party contends that defendants are incapable of withstanding greater judgment, that does not 'indicate that the settlement is unreasonable or inadequate.'"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate").

## II.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS

In preliminarily approving the proposed Settlement, the Court must consider whether it will be able to certify the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3). On April 4, 2025, Lead Plaintiff filed the Class Certification Motion. ECF Nos. 111-114. Although the Class Certification Motion was not fully briefed by the Parties and the Court has not had the opportunity to rule on that motion, many of the arguments Lead Plaintiff asserted there apply to this instant motion. Accordingly, Lead Plaintiff respectfully refers the Court to the Memorandum of Law in Support of its Motion for Class Certification, Appointment as Class Representative, and Appointment of Class Counsel (ECF No. 112) for a more detailed analysis of the factors.

Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of the Settlement only. The proposed Settlement Class, which has been stipulated to by the Parties, consists of "all persons and entities that purchased or otherwise acquired the publicly traded common stock of StoneCo Ltd. during the period from May 27, 2020 through

18

November 16, 2021, both dates inclusive, and were allegedly damaged thereby."[9] Stipulation ¶1(ii).

Pursuant to Rule 23(a): (1) the Settlement Class is so numerous that joinder of all members is impracticable (ECF No. 112 at 7-8); (2) there are questions of law or fact common to the Settlement Class (*id*. at 8-9); (3) the claims or defenses of Lead Plaintiff are typical of the claims or defenses of the Settlement Class (*id*. at 9-10); and (4) Lead Plaintiff and Lead Counsel will fairly and adequately protect the interests of the Settlement Class (*id*. at 10-11).

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. at 2. The proposed Settlement Class meets this standard: (i) common questions of both fact and law predominate (*id.* at 12-24); and (ii) a class action would be superior to other methods for the fair and efficient adjudication of the claims (*id*. at 24).

Courts within the Second Circuit have long acknowledged the propriety of certifying settlement classes. "Certification of a settlement class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *IMAX,* 283 F.R.D. at 186. For the foregoing reasons, Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of

---

[9] Excluded from the Settlement Class are: (i) StoneCo; (ii) any person who was an officer or director of StoneCo during the Class Period; (iii) any firm, trust, corporation, or other entity in which StoneCo has or had a controlling interest; (iv) StoneCo's employee retirement and benefit plan(s), if any, and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (v) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person or entity, in their capacities as such. Also excluded from the Settlement Class will be any persons or entities that exclude themselves by submitting a timely and valid request for exclusion that is accepted by the Court.

implementing the proposed Settlement.

## III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The proposed notices attached as Exhibits 1, 3, and 4 to the proposed Preliminary Approval Order, would satisfy due process, the federal rules, and the PSLRA. Rule 23(c)(2)(B) requires notice of the pendency of a class action and settlement to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process is satisfied if the notice "fairly apprise[s] the [prospective] members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.* 396 F.3d at 114.

Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Lead Counsel proposes to provide notice by: (i) individual first-class mailing of the Postcard Notice to all Settlement Class Members who can reasonably be identified and located, using mailing records obtained from StoneCo's transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers; (ii) emailing of the Postcard Notice (to the extent emails are provided to the Claims Administrator); (iii) publication of the Summary Notice in *The Wall Street Journal,* as well as dissemination of the Summary Notice on the internet using *PR Newswire*; and (iv) posting documents on a website established for the Settlement, from which copies of the long-form Notice and Claim Form can be downloaded and claims can be completed using an online portal. *See* Exhibits A-1 to A-4 to the proposed Preliminary Approval Order. The Claims Administrator will also mail the Notice and Claim Form upon request. The Postcard Notice will provide key information regarding the Settlement and the

rights of Settlement Class Members in connection therewith, and will direct recipients to the website for more detailed information. Numerous courts have approved similar notice programs. *See, e.g., In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. at 182 n.3 ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-cv-04846, 2021 WL 345790, at *3-4 (E.D.N.Y. Feb. 1, 2021) (notice included emailed summary notice, mailed postcard notice, disseminating summary notice, and website).

Collectively, the proposed forms of notice here describe, *inter alia*: (i) the terms of the Settlement and the recovery; (ii) the reasons for the Settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedure for submitting a Claim Form; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Settlement Class; and (vii) the date, time, and place of the Settlement Hearing (which can be held in-person or remotely, in the Court's discretion). The long form Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia,* stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable in the event Lead Plaintiff prevailed; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses; (iv) the names, telephone numbers, and addresses of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement. 15 U.S.C. §78u-4(a)(7)(A)-(F).

Lead Plaintiff also requests that the Court appoint Verita as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement. Verita is a nationally recognized notice and claims administration firm that has

successfully and efficiently administered numerous complex securities class action settlements. *See* www.veritaglobal.com; Rogers Decl. Exhibit 4. Verita was chosen after a competitive bidding process.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Lead Plaintiff respectfully proposes the following schedule for Settlement-related events. The proposed schedule revolves around the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the final Settlement Hearing—which Lead Plaintiff requests be approximately 100 days from the date of this motion, in order to allow time for the notices to be disseminated and for recipients of the notices to act, but to also allow the final Settlement Hearing to be held in January 2026.

| Event | Proposed Timing |
|---|---|
| Deadline for commencement of mailing the Postcard Notice | *No later than 10 business days after entry of Preliminary Approval Order ("Notice Date")* |
| Deadline for publishing the Summary Notice | *Within 14 calendar days of the Notice Date.* |
| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | *No later than 35 calendar days before the Settlement Hearing.* |
| Deadline for receipt of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Hearing.* |
| Deadline for filing reply papers | *No later than 7 calendar days before the Settlement Hearing.* |
| Deadline for submitting Claim Forms | *No later than 10 calendar days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's convenience, approximately 100 days from the filing of this motion. The hearing may be held either in-person or remotely, in the discretion of the Court. Any scheduling updates will be posted on the Settlement website and Lead Counsel's website.* |

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to the Settlement Class; (iii) appoint Verita Global, LLC as Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and grant such other and further relief as may be required.

DATED: October 21, 2025

Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

 */s/ Michael H. Rogers*
Michael P. Canty
Michael H. Rogers
Jacqueline R. Meyers
Stephen Boscolo
Grace T. Harmon
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
mrogers@labaton.com
jmeyers@labaton.com
sboscolo@labaton.com
gharmon@labaton.com

*Counsel for Lead Plaintiff Indiana Public Retirement System and Lead Counsel for the Proposed Settlement Class*

23

## CERTIFICATION OF WORD-COUNT COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the 8,750 word limit set forth in Local Civil Rule 7.1(c). The word count, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 7,146 words according to the word-processing system used to prepare the document.

Dated: October 21, 2025

/s/ *Michael H. Rogers*
MICHAEL H. ROGERS

24

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.


> /s/ Michael H. Rogers
> MICHAEL H. ROGERS