UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE STONECO LTD. SECURITIES LITIGATION | Civil Action No. 1:21-cv-9620 (GHW)(OTW) |

**DECLARATION OF MICHAEL H. ROGERS IN FURTHER SUPPORT OF
LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

I, MICHAEL H. ROGERS, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.  I am a member of the law firm of Labaton Keller Sucharow LLP, Court-appointed Lead Counsel in this proposed class action and am admitted to practice before this Court.[1] I respectfully submit this declaration, based on my personal knowledge, pursuant to the Court's October 23, 2025 Order (ECF No. 125) and in further support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement (ECF No. 121). If called upon to do so, I will testify competently to the facts set forth herein.

A.  **Factual and Procedural Background**

2.  StoneCo Ltd. ("StoneCo" or the "Company") is a financial technology company that provides payment processing services and operates primarily in Brazil. *See generally*, https://investors.stone.co/about-us/about/. As alleged in the Action, beginning in 2019, StoneCo began offering working capital loans and revolving lines of credit (the "Credit Product"). *See generally* Amended Class Action Complaint for Violation of the Federal Securities Laws, dated August 8, 2022 ("Complaint"), ECF No. 55, ¶¶71-80. The Action concerns alleged misstatements and omissions concerning the Credit Product.

3.  On November 19, 2021, the Action was commenced by the filing of an initial complaint in the United States District Court for the Southern District of New York (the "Court") alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, on behalf of a

---

[1] All capitalized terms used herein that are not defined have the same meanings as in the Stipulation and Agreement of Settlement, dated as of October 15, 2025 (the "Stipulation"), previously filed with the Court. ECF No. 123-1.

1

class of all persons and entities who purchased or otherwise acquired StoneCo common stock during the class period. ECF No. 1.

4.      After the filing of competing lead plaintiff motions and the subsequent filing of notices of non-opposition, on May 2, 2022, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") and on consent, Magistrate Judge Ona T. Wang: (i) appointed INPRS as Lead Plaintiff; (ii) approved Labaton Sucharow LLP (n/k/a Labaton Keller Sucharow LLP) ("Labaton") as Lead Counsel; and (iii) renamed the Action *In re StoneCo Ltd. Securities Litigation*, No. 1:21-cv-09620-KPF. ECF No. 45.

5.      Thereafter, Lead Plaintiff engaged in a thorough investigation of its claims for the purpose of drafting a comprehensive consolidated complaint, which included the review and analysis of: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the defendants; (iii) research reports issued by financial analysts concerning the Company; and (iv) other publicly available documents. Additionally, Lead Plaintiff, through Lead Counsel, contacted and interviewed former employees of StoneCo to discuss the issues related to the Action.

6.      On August 8, 2022, Lead Plaintiff filed the Amended Class Action Complaint for Violation of the Federal Securities Laws asserting claims under Section 10(b) of Exchange Act and Section 20(a) against StoneCo, Thiago dos Santos Piau, Lia Machado de Matos, Rafael Martins Pereira, Marcelo Bastianello Baldin, André Street de Aguiar, and Eduardo Cunha Monnerat Solon de Pontes. ECF No. 55. The Complaint alleged that, during the class period of March 2, 2020 through November 16, 2021, inclusive, the price of StoneCo common stock was artificially inflated as a result of the then-named defendants' allegedly false and misleading

statements and omissions, and declined when the truth was allegedly revealed through a series of partial corrective disclosures.

7.  On November 7, 2022, StoneCo filed a motion to dismiss the Complaint, which Lead Plaintiff opposed, and to which StoneCo replied. ECF Nos. 67-69, 73-74. On September 25, 2024, the Court entered its Opinion and Order granting, in part, and denying, in part, StoneCo's motion to dismiss ("MTD Order"). ECF No. 76. As a result of the MTD Order, the Court dismissed certain alleged misstatements, which resulted in the Class Period beginning on May 27, 2020.

8.  On November 20, 2024, the parties entered into a stipulation of voluntary dismissal as to individual defendants Thiago dos Santos Piau, Lia Machado de Matos, Rafael Martins Pereira, Marcelo Bastianello Baldin, André Street de Aguiar, and Eduardo Cunha Monnerat Solon de Pontes, dismissing them from the Action without prejudice (ECF No. 84), which was so-ordered by the Court on November 21, 2024 (ECF No. 85).

9.  On November 27, 2024, StoneCo filed its Answer to the Complaint. ECF No. 86.

B.  **Discovery and Class Certification**

10. Following the Parties' Initial Conference before Magistrate Judge Ona T. Wang on December 18, 2024, the Court issued a Civil Case Management Plan and Scheduling Order that set a schedule requiring class certification to be fully briefed by August 4, 2025; fact discovery to close on December 19, 2025; and expert discovery to close on May 1, 2026. ECF No. 93.

11. Pursuant to the Court's Individual Rules, Lead Plaintiff sought leave to file its motion for class certification in accordance with the schedule set forth in the Civil Case Management Plan, which the Court granted on March 28, 2025. ECF No. 109. On April 4, 2025, Lead Plaintiff filed its motion for class certification, and for the appointment of Lead Plaintiff as

3

Class Representative and Lead Counsel as Class Counsel ("Class Certification Motion"). ECF Nos. 111-114.

12. Beginning in December 2024, the Parties engaged in formal discovery efforts, including exchanging initial disclosures, serving requests for production of documents and interrogatories, as well as subpoenas on third parties. The Parties engaged in numerous meet-and-confer conferences regarding the scope of discovery and began their production of documents, as negotiations over the scope of discovery continued.

13. By May 2025, StoneCo produced approximately 1,520 documents (about 12,000 pages) to Lead Plaintiff, Lead Plaintiff produced approximately 700 documents (about 13,500 pages) to StoneCo, and third parties produced approximately 50 documents (about 1,200 pages). In connection with the documents produced by StoneCo, the Parties engaged in substantial translation efforts, as the Company maintained many of its documents in Portuguese.

C.   **The Parties' Negotiating History and Settlement**

14. In April 2025, as fact discovery was underway, the Parties began exploring the possibility of a negotiated resolution of the Action through telephonic conferences and written correspondence, ultimately agreeing that the Parties' counsel would meet in person to discuss a potential resolution through mediation. On May 1, 2025, the Parties submitted a joint letter requesting that the Court extend the class certification briefing schedule and StoneCo's document production deadline in light of the upcoming mediation. ECF No. 116.

15. On June 10, 2025, counsel for the Parties participated in a full-day mediation session before David Murphy of Phillips ADR Services (the "Mediator"). In advance of that session, the Parties submitted detailed confidential mediation statements, together with numerous supporting exhibits, which addressed both liability and damages issues.

16. The June 10, 2025 session ended without any agreement being reached. With Lead Plaintiff and StoneCo still meaningfully apart in their respective positions after the mediation, they agreed to continue negotiations through the Mediator.

17. On June 23, 2025, the Mediator sent the Parties a mediator's recommendation for settlement and, on June 24, 2025, the Parties accepted the recommendation and reached a settlement in principle to resolve all claims in the Action on a class-wide basis for $26,750,000. The Parties' acceptance of the Mediator's recommendation took into account, among other things, the Parties' respective views on Lead Plaintiff's claims and the Parties' defenses.

18. The Parties memorialized their agreement in a Term Sheet that was executed on August 22, 2025, subject to the execution of a formal settlement agreement, related papers, and approval by the Court.

19. As of October 15, 2025, the Parties executed the Stipulation. In exchange for payment of the Settlement Amount, upon the Effective Date of the Settlement, Lead Plaintiff and the Settlement Class will release the Released Plaintiffs' Claims against the Released Defendant Parties, and Defendant will release the Released Plaintiff Parties from all Released Defendant's Claims. *See* Stipulation ¶¶1(bb)-(ff), 4, and 5.

20. The definition of Released Plaintiffs' Claims has been tailored to provide the Released Defendant Parties with "complete peace," while being limited to claims that were asserted, or could have been asserted, by the Settlement Class, arising out of both the facts and matters in the Action and the purchase or acquisition of StoneCo publicly traded common stock during the Class Period. *See* Stipulation ¶1(ff).

21. The Settlement is not "claims-made" and there is no reversion of unclaimed funds to StoneCo. *See* Stipulation ¶12.

**D.      The Adequacy of Lead Counsel and Lead Plaintiff**

22.     I respectfully submit that Lead Plaintiff INPRS and Lead Counsel have adequately prosecuted this Action on behalf of the class since its inception and will continue to do so throughout the administration of the Settlement to secure and deliver its benefits to the Settlement Class.

23.     Lead Plaintiff is a sophisticated institutional investor with billions of dollars in assets under management for the benefit of more than 542,793 members, representing 1,333 employers, including public universities, school corporations, municipalities, and state agencies throughout the state of Indiana. *See* ECF No. 113-2. As demonstrated in its declaration in support of the Class Certification Motion filed on April 4, 2025, Lead Plaintiff has been an active and informed participant in the litigation, regularly communicating with Lead Counsel and reviewing significant pleadings and orders. ECF No. 113-2. Faithfully executing its duties, Lead Plaintiff was engaged in each step of the litigation.

24.     Likewise, Lead Counsel, highly experienced in securities class action litigation, diligently prosecuted the Action and carefully considered the benefits of a resolution before agreeing to a settlement. *See* Exhibit 2 to the Declaration of Michael H. Rogers, dated October 21, 2025 ("Rogers I Decl."), firm profile.

25.     Lead Counsel has developed a deep understanding of the facts of the case and merits of the claims through: (i) a comprehensive investigation; (ii) engaging a damages and causation expert; (iii) defeating, in part, defendant's motion to dismiss; (iv) commencing and participating in discovery; (v) engaging consultants concerning Brazilian law; (vi) preparing the Class Certification Motion; and (vii) engaging in arm's-length negotiations with experienced counsel.

E.     **The Adequacy of the Settlement Amount**

26.    If approved, the Settlement will provide a recovery of $26,750,000 in cash to resolve this proposed securities class action. Lead Plaintiff and Lead Counsel evaluated the potential risks in the case and negotiated vigorously with StoneCo's counsel to secure this recovery, with the assistance of a well-respected mediator.

27.    During the June 10, 2025 mediation session, the Parties asserted widely divergent arguments concerning Lead Plaintiff's ability to prove falsity and scienter, the relevance of outstanding discovery requests with respect to Lead Plaintiff's claims, whether documents and testimony developed in discovery would support the allegations pled in the Complaint, and significant issues pertaining to loss causation and damages.

28.    The Settlement eliminates the real risk that protracted litigation might lead to a lesser or no recovery, and guarantees a significant and near-term recovery for the Settlement Class. Although Lead Plaintiff and Lead Counsel believe the claims to be strong, they acknowledge that Defendant could advance several substantial arguments that could have reduced, or altogether eliminated, any recovery for StoneCo investors.

29.    For example, although the Court denied, in part, StoneCo's motion to dismiss, Lead Plaintiff and the class would have faced significant hurdles at summary judgment and at trial in connection with ultimately proving falsity and scienter, which are necessary for their Exchange Act claims. Additionally, documents produced by StoneCo in discovery suggested that, as disclosed by StoneCo: (i) COVID-19 caused significant problems for StoneCo's Credit Product; and (ii) the new registry laws in Brazil presented difficulties and contributed to increasing delinquencies.

30. StoneCo also obtained declarations from four confidential witnesses cited in Lead Plaintiff's Complaint that appeared to clarify, modify, or recant certain allegations attributed to them in the Complaint in support of allegations of falsity and scienter.

31. Although Lead Plaintiff had not yet had the opportunity to seek further discovery in connection with StoneCo's document production and confidential witness declarations, they potentially would have posed difficulties for Lead Plaintiff if the Action had proceeded.

32. Additionally, the difficulties of proving liability at summary judgment and trial would have been compounded by the fact that StoneCo operates primarily in Brazil—which presents translation issues, legal issues, and difficulties pertaining to third-party discovery. For example, Lead Plaintiff understands that U.S. attorneys face legal restrictions in their ability to take U.S.-style depositions in Brazil, which would require the parties to engage foreign counsel and/or schedule depositions in neighboring countries without similar restrictions. Moreover, Lead Plaintiff understands that third-party discovery is far more limited in Brazil as compared to the U.S., requiring lengthy interventions and/or approval from U.S. and Brazilian courts with limitations on the type and scope of discovery requests permitted.

33. Moreover, while StoneCo had not yet submitted its opposition to Lead Plaintiff's Class Certification Motion, Lead Plaintiff anticipated a full opposition to the motion, likely on several grounds, including that the Class Period should be reduced significantly because of the inactionability of certain misstatements and that one or more of the corrective disclosures at issue did not cause a statistically significant price decline or reveal new information about the Credit Product.

34. Even if the hurdles to establishing liability were overcome, Lead Plaintiff would have likely confronted challenges in proving loss causation and damages. In order to recover, Lead

8

Plaintiff would need to prove that the allegedly corrective information disclosed by StoneCo on August 25, 2021, August 30, 2021, and November 16, 2021 revealed new information about StoneCo's Credit Product that caused the price StoneCo's stock to decline, as opposed to other information that was unrelated to the alleged misstatements. StoneCo may have argued, for example, that the decline on August 25 was not sufficiently statistically significant and that confounding information released during the trading day on November 17, 2021 significantly reduced recoverable damages.

35. Lead Plaintiff consulted with an expert in damages and loss causation, Matthew D. Cain, Ph.D., who analyzed class-wide damages in light of the facts and circumstances presented in the case and developed through the discovery process to date.

36. Lead Plaintiff's consulting damages expert estimated that maximum damages attributable to all three allegedly corrective disclosures was approximately $2 billion, depending on the trading model and assumptions used. However, if only the August 30 allegedly corrective disclosure was found to be actionable, aggregate damages would have decreased to approximately $400 million. *See* Declaration of Matthew D. Cain, Ph.D. in Further Support of Preliminary Approval of Proposed Settlement, dated November 6, 2025 ("Cain Decl."), ¶20, attached hereto as Exhibit A.

37. In addition, there were risks that the Class Period could have been shortened to start much later, in March 2021, which could have reduced aggregate damages to approximately $200 million. *Id*. Accordingly, the Settlement recovers a range of approximately 1.3% of estimated maximum damages to 6.7%-13.4% of likely recoverable estimated damages, which is a favorable result.

38. Notably, the $26.75 million recovery is more than double the median recovery of $12.5 million in securities class actions settled in the first half of 2025. *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: H1 2025 Update*, at 2 (NERA Economic Research Associates, Inc. 2025), attached as Exhibit 3 to the Rogers I Decl..

39. Also according to NERA, after excluding merger objection cases, unregistered crypto cases, and settlements without a monetary payment to the class, in the first half of 2025, 44% of settlements had a value of less than $10 million, 31% were between $10 million and $49.9 million, and only 25% settled for $50 million or more. *See* Exhibit 3 to the Rogers I Decl. at 2, 14,16.

F. **Settlement Administration**

40. The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator, Verita Global, LLC ("Verita"). Verita was chosen after a competitive bidding process. Verita is a nationally recognized notice and claims administration firm that has successfully and efficiently administered numerous complex securities class action settlements. *See* www.veritaglobal.com; Exhibit 4 to Rogers I Decl.

41. The proposed notice and claims process for the Settlement is discussed in the accompanying Declaration of Lance Cavallo Regarding Settlement Notice and Administration, dated November 7, 2025, attached hereto as Exhibit B.

42. The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a Claimant will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. *Id*. ¶¶21-22, Stipulation, Ex. A-2. Authorized third-party filers will also be able to submit their clients' claims. *Id*.

43. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to recover by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible Claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation, ¶24. Lead Plaintiff's claim will be reviewed in the same manner.

44. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. at ¶30(d). Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*.

45. After the Settlement reaches its Effective Date (*id*. at ¶¶26, 39) and the claims process is completed, Authorized Claimants will be issued payments. If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. *Id*. ¶¶27.

46. If there are unclaimed funds, Lead Plaintiff designates Consumer Federation of America ("CFA") as *cy pres* beneficiary, or such other non-sectarian, not-for-profit charitable organization approved by the Court. *Id*. at ¶27. CFA is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests through policy research, advocacy, and education. *See* www.consumerfed.org. With respect to victims of financial fraud, CFA has an Investor Protection program and an Investment Research Center that works nationwide to promote consumer-oriented policies that safeguard investors against fraud through: (i) the development of educational material for investors; (ii) drafting policies and legislation; (iii) and providing

11

testimony and comments on legislation and regulations. www.consumerfed.org/issues/investor-protection. CFA has been approved in numerous securities cases, including *Chen v. Missfresh Limited, et al.*, Case No. 22-cv-09836-JSR (S.D.N.Y.) and *ODS Capital LLC v. JA Solar Holdings Co. Ltd. et al.*, No. 18-cv-12083 (S.D.N.Y.).

47. The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Lead Plaintiff, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court. Settlement Class Members that were allegedly harmed as a result of the alleged fraud, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan.

48. The proposed plan was created by Lead Plaintiff's consulting damages expert and is consistent with Lead Plaintiff's theories of damages under the Exchange Act and the Court's rulings in the case. *See* Cain Decl., Exhibit B hereto, ¶¶7-14.

### G. Reasonableness of Lead Counsel's Fee and Expense Application

49. The reasonableness of Lead Counsel's request for attorneys' fees and expenses will be decided by the Court after Lead Counsel files a motion for attorneys' fees and Litigation Expenses. The Settlement does not contemplate any specific award. Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by StoneCo. *See* Stipulation, ¶¶13-14.

50. In connection with Lead Counsel's Fee and Expense Application, Lead Counsel will seek no more than 30% of the Settlement Fund.

51. Lead Plaintiff may seek reimbursement of its reasonable costs and expenses (including lost wages) directly related to its participation in the Action, pursuant to the PSLRA.

52. Lead Counsel will also seek payment of Litigation Expenses incurred during the prosecution of the Action of no more than $420,000.

## CONCLUSION

53. For all the foregoing reasons, and as set forth in the previously filed Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement, dated October 21, 2025, it is respectfully submitted that the Court "will likely be able to" approve the Settlement as fair, reasonable, and adequate at the final Settlement Hearing, and should therefore take the first step of preliminarily approving the Settlement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 7, 2025.

                                           /s/ *Michael H. Rogers*
                                          MICHAEL H. ROGERS