**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE STONECO LTD. SECURITIES LITIGATION | Civil Action No. 1:21-cv-9620 (GHW)(OTW) |

# MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

PRELIMINARY APPROVAL AND THE NOTICE PROGRAM ............................................. 3

ARGUMENT ........................................................................................................................ 4

I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL ................................................ 4

A. The Law Favors and Encourages Settlement of Class Action Litigation .............. 4

B. The Standards for Final Approval ........................................................................ 5

1. Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class ....................................................................................... 7

2. The Settlement Was Reached After Arm's-Length Negotiations .............. 8

3. The Relief Provided by the Settlement Is Adequate ................................ 10

(a) The Complexity, Costs, Risks, and Likely Duration of the Litigation Support Approval of the Settlement ............................ 11

(b) The Effective Process for Distributing Relief to the Settlement Class ........................................................................... 16

(c) The Requested Attorneys' Fees and Expenses Are Reasonable .................................................................................... 17

(d) The Relief Provided in the Settlement Is Adequate Taking Into Account all Agreements Related to the Settlement ............... 18

4. Application of the Remaining *Grinnell* Factors Supports Approval ........ 18

(a) The Ability of Defendant to Withstand a Greater Judgment ........ 18

(b) The Reaction of the Settlement Class to Date ............................. 18

(c) The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlement ........................................................................................ 19

(d) The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All the Attendant Risks of Litigation Support Approval of the Settlement .............. 21

II. THE PROPOSED PLAN OF ALLOCATION FOR THE PROCEEDS OF THE SETTLEMENT TREATS CLASS MEMBERS EQUITABLY AND SHOULD BE APPROVED BY THE COURT ........................................................................ 22

III. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS .............. 23

IV. NOTICE SATISFIED RULE 23 AND DUE PROCESS ................................................ 24

CONCLUSION........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3D Sys. Sec. Litig.*,
2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ....................21

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ....................24, 25

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................20

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ....................14

*Arbuthnot v. Pierson*,
607 F. App'x. 73 (2d Cir. 2015) ....................8

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)....................15

*In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012).................... *passim*

*Christine Asia Co. Ltd. v. Yun Ma, et. al*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)....................18

*In re Citigroup Inc. Sec. Litig.*,
2014 WL 2112136 (S.D.N.Y. May 20, 2014) ....................5

*City of Providence v. Aeropostale Inc. et al.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015) ....................8

*Ebbert v. Nassau Cnty.*,
2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011) ....................16

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x. 37 (2d Cir. 2016) ....................11

*In re Facebook, Inc.*,
674 F. App'x. 37 (2d Cir. 2016) ....................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ....................21, 22

*Giant Interactive Grp. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ....................23

*In re Grab Holdings Ltd. Sec. Litig.*,
2025 WL 1413515 (S.D.N.Y. May 15, 2025) ....................24

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ....................20, 22

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................11, 22

*Lozada v. TaskUs, Inc.*,
2025 WL 3125848 (S.D.N.Y. Nov. 6, 2025) ....................9

*In re Marsh & McLennan Cos. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................25

*Moses v. New York Times Co.*,
79 F.4th 235 (2d Cir. 2023) ....................6

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)....................21

*In re Northern Dynasty Minerals Ltd. Sec. Litig.*,
2023 WL 5511513 (E.D.N.Y. Aug. 24, 2024)....................21, 22

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)....................21, 23

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ....................6, 10

*Pearlstein v. BlackBerry Ltd.*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)....................11

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ....................7

*Puddu v. 6D Global Tech., Inc.*,
2021 WL 1910656 (S.D.N.Y. May 12, 2021) ....................19

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ....................14

*Rodriguez v. CPI Aerostructures, Inc.*,
2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023) ........ 24

*Rosi v. Aclaris Therapeutics, Inc.*,
2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) ........ 4, 5

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2010) ........ 8, 9, 11, 19

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ........ 14

*Tchrs. Ret. Sys. of La. v. A.C.L.N. Ltd.*,
2004 WL 1087261 (S.D.N.Y. May 14, 2004) ........ 20

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........ 12, 15

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
2025 WL 2984717 (S.D.N.Y. Oct. 23, 2025) ........ 6

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........ 8, 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ........ 4, 5, 24

*In re Warner Chilcott Ltd. Sec. Litig.*,
2009 WL 2025160 (S.D.N.Y. July 10, 2009) ........ 19

**Rules**

Fed. R. Civ. P. 23(a) ........ 3, 23, 24

Fed. R. Civ. P. 23(b)(3) ........ 3, 23, 24

Fed. R. Civ. P. 23(c)(1)(C) ........ 15

Fed. R. Civ. P. 23(c)(2)(B) ........ 25

Fed. R. Civ. P. 23(e) ........ 5, 6, 24

Fed. R. Civ. P. 23(e)(2) ........ 5, 6, 7

Fed. R. Civ. P. 23(e)(2)(B) ........ 8

Fed. R. Civ. P. 23(e)(2)(C) ........ 10

Fed. R. Civ. P. 23(e)(2)(A) ....................................................................................................7

Fed. R. Civ. P. 23(e)(2)(C)(ii)................................................................................................16

Fed. R. Civ. P. 23(e)(2)(C)(iv)...............................................................................................18

Fed. R. Civ. P. 23(e)(3) ..........................................................................................................5

Lead Plaintiff Indiana Public Retirement System ("Lead Plaintiff" or "INPRS"), on behalf of itself and all other members of the proposed Settlement Class,[1] respectfully submits this memorandum of law in support of its motion for: (i) final approval of the proposed Settlement of the above-captioned class action (the "Action"); (ii) approval of the proposed Plan of Allocation for distribution of the Net Settlement Fund; and (iii) final certification of the Settlement Class.

## PRELIMINARY STATEMENT

If approved, the proposed Settlement will provide a recovery of $26,750,000 in cash to resolve this securities class action, pending against defendant StoneCo Ltd. ("StoneCo," the "Company," or "Defendant"). The terms of the proposed Settlement are set forth in the Stipulation, which was entered into by Lead Plaintiff and Defendant.

As described below and in the accompanying Declaration of Michael H. Rogers in Support of (i) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses, dated January 23, 2026 ("Rogers Declaration" or "Rogers Decl."), the decision to settle was well-informed by complex litigation efforts that included, among other things: (i) conducting a comprehensive investigation of the claims at issue, including contacting and interviewing former employees of StoneCo, all of whom were in Brazil; (ii) preparing and filing a particularized amended Complaint, which expanded the scope of the initial complaint by adding additional misrepresentations, disclosures, and other allegations in support of the claims at issue; (iii) defeating, in part, StoneCo's motion to dismiss the Complaint; (iv) moving for class certification; (v) drafting and propounding discovery requests on StoneCo; (vi) engaging in protracted and often

[1] All capitalized terms used in this memorandum that are not defined have the same meanings as in the Stipulation and Agreement of Settlement, dated as of October 15, 2025 ("Stipulation"). ECF No. 123-1. Unless otherwise noted, citations and internal quotations have been omitted.

contentious negotiations regarding the scope of those discovery requests and the subsequent timing of productions in response thereto (vii) analyzing over 12,000 pages of documents produced in discovery, many of which required significant translation efforts from Portuguese to English; (viii) engaging consultants concerning Brazilian law and the financial technology sector in Brazil; (ix) engaging and consulting with experts in accounting matters, damages and loss causation; and (x) preparing for and participating in a formal in-person arms' length mediation. *See generally* Rogers Decl. at §§III.-V.[2]

While Lead Plaintiff believes the Settlement Class's claims are meritorious and strong, it recognizes there were substantial risks to continued litigation and trial. As discussed in detail in the Rogers Declaration and below, Lead Plaintiff faced obstacles with respect to establishing falsity, materiality, scienter, and/or loss causation. Additionally, Defendant StoneCo would undoubtedly put forward facts and several highly qualified experts in support of numerous affirmative defenses that could potentially absolve Defendant from liability or drastically reduce the size of the class and the amount of recoverable damages. The Settlement avoids these risks (and others), as well as further delay and the expense of continued litigation – while providing a substantial and certain benefit to the Settlement Class.

Lead Plaintiff was actively involved throughout the litigation, diligently representing the Settlement Class, and has approved the Settlement. *See* Declaration of Jeffrey Gill on behalf of

---

[2] The Rogers Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the litigation efforts; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation, among other things. Citations to "¶" in this memorandum refer to paragraphs in the Rogers Declaration.

All exhibits are annexed to the Rogers Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Rogers Declaration and the second reference is to the exhibit designation within the exhibit itself.

INPRS, Ex. 1. The Settlement Class's reaction to date similarly reflects approval of the Settlement. Notice was provided to the Settlement Class beginning on November 26, 2025 and to date, no objections or requests for exclusion have been received. *See* Declaration of Lance Cavallo Regarding (A) Dissemination of Postcard Notice and Notice Packet; (B) Publication of Summary Notice; (C) Establishment of Telephone Hotline and Settlement Website; and (D) Report on Requests for Exclusion Received to Date ("Mailing Decl."), Ex. 4 at ¶¶2-8.

In addition, the proposed Plan of Allocation for the distribution of the proceeds of the Settlement, which was developed by Lead Counsel with the assistance of Lead Plaintiff's damages expert, is a fair and reasonable method for distributing the Net Settlement Fund to eligible Claimants.

Given the foregoing considerations and the factors addressed below, Lead Plaintiff respectfully submits that: (i) the Settlement meets the standards for final approval under Rule 23 and is a fair, reasonable, and adequate result for the Settlement Class; and (ii) the proposed Plan of Allocation is a fair and reasonable method for allocating the Net Settlement Fund to Settlement Class Members who submit valid Claim Forms. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and finally certify the Settlement Class, and approve the proposed Plan of Allocation.

## PRELIMINARY APPROVAL AND THE NOTICE PROGRAM

By order entered November 12, 2025, the Court preliminarily approved the Settlement, preliminarily certified the Settlement Class, and approved the forms and methods of providing notice to the Settlement Class. ECF No. 127.[3] Pursuant to, and in compliance with, the Preliminary

[3] In the Preliminary Approval Order, the Court provisionally certified the proposed Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). Nothing has occurred to alter the propriety of that determination.

Approval Order, beginning on November 26, 2025, the Court-appointed Claims Administrator Verita Global, LLC ("Verita"), caused the Postcard Notice to be disseminated to potential Settlement Class Members and banks, brokers, and other nominees ("Nominees"). *See* Ex. 4 at ¶¶2-8. To date, a total of 149,804 Postcard Notices have been mailed (or emailed). *Id*. at ¶8. On December 10, 2025, the Summary Notice was published in *The Wall Street Journal* and disseminated over the internet using *PR Newswire*. *Id*. at ¶9 and Ex. C attached thereto.

The Claim Form and the long-form Notice, along with other Settlement related documents, were posted on a website for the Settlement established by Verita. *Id*. at ¶¶11-12. The website also provides important dates and deadlines in connection with the Settlement. *Id*. Copies of the Postcard Notice, long-form Notice, and Claim Form are also available on Lead Counsel's website, www.labaton.com. ¶90.

To date, reaction to the Settlement has been very positive. While the deadline (February 6, 2026) for objecting and seeking exclusion has not yet passed, there have been no objections and no requests for exclusion. Should any be received, Lead Plaintiff will address them in their reply papers, which are due to be filed with the Court on February 20, 2026. Additionally, nothing has occurred to date to impact the Court's provisional certification of the Settlement Class.

## ARGUMENT

### I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL

#### A. The Law Favors and Encourages Settlement of Class Action Litigation

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"). *See also Rosi v. Aclaris Therapeutics, Inc.,* 2021 WL 5847420, at *8 (S.D.N.Y.

Dec. 9, 2021) ("[c]ourts have recognized a public policy benefit in rewarding attorneys that bring successful securities actions that foster the enforcement of the federal securities laws."). This policy would be well-served by approval of the Settlement of this securities class action, which, absent resolution, could consume years of additional resources of this Court and, likely, the Court of Appeals for the Second Circuit.

### B. The Standards for Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval. The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In ruling on final approval of a class settlement, courts in the Second Circuit have held that a court should examine both the negotiating process leading to the settlement and the settlement's substantive terms. *See Wal-Mart Stores*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig.*, 2014 WL 2112136, at *2-3 (S.D.N.Y. May 20, 2014).

Rule 23(e)(2) provides that a court may approve a class settlement as "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > i. the costs, risks, and delay of trial and appeal;
> >
> > ii. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > iii. the terms of any proposed award of attorneys' fees, including timing of payment; and
> >
> > iv. any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Rule 23, as amended in December 2018, has not changed the established overall standard for approving a proposed class action settlement, i.e., evaluating whether it is fair, adequate, and reasonable. Fed R. Civ. P. 23(e)(2). In *City of Detroit v. Grinnell Corp*., which predates the Rule 23 amendments, the Second Circuit held that the following factors should be considered in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The Advisory Committee Notes to the 2018 amendments to Rule 23 indicate that the Rule 23(e) factors are not intended to "displace" any factor previously adopted by the Second Circuit, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendments. Indeed, "[t]he Court understands the new Rule 23(e) factors to add to, rather than displace, the [Second Circuit] factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 29 (E.D.N.Y. 2019); *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) ("Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement.); *see also In re Turquoise Hill Res. Ltd. Sec. Litig.,* 2025 WL 2984717, at *5 (S.D.N.Y. Oct. 23, 2025) ("Most of the requirements set forth in the amendments to Rule 23(e)(2) have long been incorporated in the nine-factor test adopted by the Second Circuit in *Grinnell*…"). Accordingly,

Lead Plaintiff will discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to the Rule 23(e)(2) factors and will also discuss the application of relevant, non-duplicative factors traditionally considered by the Second Circuit.

### 1. Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a class action settlement, a court must consider whether the "class representatives and class counsel have adequately represented the class." Rule 23(e)(2)(A). Here, Lead Plaintiff, like all other members of the Settlement Class, purchased or otherwise acquired StoneCo publicly traded common stock during the Class Period and was allegedly damaged thereby. Thus, the claims of the Settlement Class and Lead Plaintiff would prevail or fail in unison, and the common objective of maximizing recovery from Defendant aligns the interests of Lead Plaintiff and all members of the Settlement Class. *See, e.g., In re Polaroid ERISA Litig*., 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

In pursuing these objectives, Lead Plaintiff was an active and informed participant in the litigation and, among other things: (i) conferred with counsel on the overall strategy for prosecuting the Action and maximizing the recovery for the class; (ii) reviewed material pleadings and court filings; (iii) evaluated regular status reports from counsel regarding developments in the litigation; (iv) responded to discovery requests propounded by Defendant, including interrogatories and requests for the production of documents; and (v) analyzed and responded to Defendant's settlement proposals over the course of the mediation efforts, including attending the mediation session and ultimately authorizing the acceptance of the Settlement. *See* Ex. 1 at ¶5. Additionally, Lead Plaintiff is a sophisticated institutional investor that took an active role in

supervising the litigation, as envisioned by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and endorses the Settlement. *Id*. at ¶¶6-7, 12. A settlement reached "with the endorsement of a sophisticated institutional investor … is entitled to an even greater presumption of reasonableness." *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007).

Throughout the Action, Lead Plaintiff had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation. Labaton Keller Sucharow LLP ("Labaton") is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 6-C) and was able to conduct the litigation successfully against skilled opposing counsel. During the course of the litigation, Lead Plaintiff and Lead Counsel developed a firm understanding of the facts of the case and the merits of the claims. *See generally* Rogers Declaration. The judgment of Lead Counsel—a law firm with deep expertise in the field of securities class action litigation—that the Settlement is in the best interests of the Settlement Class is also entitled to "great weight." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2010); *City of Providence v. Aeropostale Inc. et al*., 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015).

Accordingly, the Settlement Class has been, and remains, well represented.

**2. The Settlement Was Reached After Arm's-Length Negotiations**

In weighing approval of a class-action settlement, the Court must consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "Courts have traditionally considered other related circumstances in determining the 'procedural' fairness of a settlement, including: (i) counsel's understanding of the strengths and weakness of the case based on factors such as the stage of the proceedings and the amount of discovery completed, (ii) the absence of

any indication of collusion in the settlement negotiations, and (iii) a mediator's involvement in the negotiations." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *3.

As discussed in the Rogers Declaration, the Parties and their counsel had well-honed understandings of the strengths and weaknesses of the case before agreeing to settle. *See* Rogers Decl. at §§III.-VI. Among other things, Lead Plaintiff and Lead Counsel: (i) conducted a comprehensive investigation of the claims at issue, including contacting and interviewing former employees of StoneCo, all of whom were in Brazil; (ii) prepared and filed a particularized amended Complaint, which expanded the scope of the initial complaint by adding additional misrepresentations, disclosures, and other allegations in support of the claims at issue; (iii) defeated, in part, StoneCo's motion to dismiss the Complaint; (iv) moved for class certification; (v) drafted and propounded discovery requests on StoneCo; (vi) engaged in protracted and often contentious negotiations regarding the scope of those discovery requests and the subsequent timing of productions in response thereto; (vii) analyzed over 12,000 pages of documents produced in discovery, many of which required significant translation efforts from Portuguese to English; (v) engaged consultants concerning Brazilian law and the financial technology sector in Brazil; and (vi) engaged and consulted with experts in accounting matters, damages and loss causation. Rogers Decl. at §§III.-IV.

Furthermore, the proposed Settlement was achieved in connection with thorough arm's-length negotiations that included an in-person mediation session held on June 10, 2025 before David Murphy of Phillips ADR Services an experienced mediator of securities class actions (the "Mediator"). Rogers Decl. at §V.; *Lozada v. TaskUs, Inc.,* 2025 WL 3125848, at *5 (S.D.N.Y. Nov. 6, 2025) (approving settlement and noting that the Settlement was reached following a mediation conducted before an experienced mediator, David M. Murphy of Phillips ADR). Indeed,

courts have long recognized the importance of arm's length negotiations in connection with a settlement. *See, e.g.*, *See In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a settlement fair where the parties engaged in "arm's length negotiations," including mediation before an experienced and well-regarded mediator of complex securities cases).

Prior to the June 10, 2025 mediation session, the Parties exchanged, and submitted to the Mediator, mediation statements, together with numerous exhibits, that addressed both liability and damages issues. ¶60. The Parties did not resolve the Action at the mediation session but agreed to continue discussions with the Mediator to further explore the possibility of a negotiated resolution. On June 23, 2025, the Mediator issued a Mediator's recommendation, which the Parties accepted on June 24, 2025. ¶61. A Term Sheet was executed as of August 19, 2025, and the Parties subsequently negotiated the Stipulation, which sets forth the final terms and conditions of the Settlement. ¶62. The negotiations were at all times at arm's-length and have produced a result that is in the best interests of the Settlement Class.

### 3. The Relief Provided by the Settlement Is Adequate

The Court must consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). "This assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee*, 330 F.R.D. at 36.

**(a) The Complexity, Costs, Risks, and Likely Duration of the Litigation Support Approval of the Settlement**

Securities class actions like this one are by their nature highly complex, and district courts have long recognized that "[a]s a general rule, securities class actions are notably difficult and notoriously uncertain to litigate." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x. 37 (2d Cir. 2016); *In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. at 266; *In re Signet Jewelers Ltd. Sec. Litig.,* 2020 WL 4196468, at *4 ("[I]n evaluating the settlement of a securities class action, federal courts, 'have long recognized that such litigation is notably difficult and notoriously uncertain.'"). "Accordingly, '[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *3 (S.D.N.Y. Sept. 29, 2022).

As detailed in the Rogers Declaration, completing discovery, certifying a class, prevailing in connection with summary judgment challenges, and then achieving a litigated verdict (and sustaining any such verdict on appeal) would have been difficult and uncertain undertakings. *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (finding that the complexity, expense, and duration of continued litigation supports final approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable"). Significantly, this case also would have confronted significant translation requirements, legal issues, and difficulties related to both Defendant and third-party discovery given that StoneCo operates primarily in Brazil and Lead Plaintiff's case would have been presented largely through Brazilian witnesses and documents in Portuguese. ¶¶74-75. Attorneys based in the U.S. face legal restrictions in their ability to take U.S.-style depositions in Brazil,

which would have required the Parties to engage foreign counsel and/or schedule depositions in neighboring countries without similar restrictions. Moreover, Lead Plaintiff understands that third-party discovery is far more limited in Brazil as compared to the U.S., requiring lengthy and costly intervention and/or approval from U.S. and Brazilian courts with limitations on the type and scope of discovery requests permitted. ¶75.

Additionally, trial of the claims would have required extensive expert testimony on issues related to falsity, materiality, and proving damages. Courts regularly observe that these sorts of disputes—requiring dueling testimony from experts—are particularly difficult for plaintiffs to litigate. *See*, *e.g.*, *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited …").

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463. In most cases, this will be the most important factor for a court to consider in its analysis of a proposed settlement. *See Id*. at 455 ("The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement."). As discussed below, Lead Plaintiff faced risks in establishing falsity, materiality, scienter, and loss causation—to sustain the remaining securities fraud claims through class certification, summary judgment, and trial.

**(i) Risks Related to Proving Liability: Material Falsity**

At summary judgment and trial, StoneCo would have likely maintained that Lead Plaintiff could not establish that StoneCo's statements were materially false and misleading. ¶¶70-77. For example, Lead Plaintiff alleged, and the Court sustained, two categories of false and misleading statements, as well as omissions, related to StoneCo (1) touting increases in the Credit Product's

selectivity over time, and (2) blaming rising delinquency rates on COVID-19 and Brazil's regulatory changes. Defendant would likely rely on evidence purportedly demonstrating that: (i) COVID-19 caused significant problems for StoneCo's Credit Product; and (ii) the new registry laws in Brazil contributed to increasing delinquencies. Lead Counsel consulted with an expert regarding the Brazilian government's directives and regulations impacting the financial technology industry, including changes to the Registry System and Brazil's response to the COVID-19 pandemic, but the issues presented by these matters were complex and novel, and it was uncertain how they would evolve during ongoing discovery or how a jury would view them. ¶¶71-72.

StoneCo also obtained declarations from, and sought information about, four confidential witnesses cited in the Complaint. The declarations appeared to clarify, modify, or recant certain allegations in the Complaint attributed to those witnesses in support of allegations of falsity and scienter. Although Lead Plaintiff had not yet had the opportunity to seek further discovery in connection with the confidential witness declarations, and therefore does not concede their accuracy or relevance, they potentially could have posed procedural and/or substantive challenges if the Action had proceeded. ¶73.

**(ii) Risks to Proving Scienter**

Defendant also would have likely argued that Lead Plaintiff could not establish that the alleged misstatements were made with the requisite intent. ¶¶78-80. For example, StoneCo would have likely argued, *inter alia*, that Lead Plaintiff could not establish that any executive whose intent could be imputed to StoneCo reviewed data from StoneCo's "Marco Polo" system, internal reports, or Company meetings sufficient to contradict StoneCo's public statements. Moreover, StoneCo would likely seek to prove that any problems arising from or failures related to the Credit Product do not constitute recklessness in the context of securities fraud. Affirmatively proving

StoneCo's intent through documents and witnesses, particularly Brazilian witnesses and documents in Portuguese, would have been extremely difficult. ¶79.

While Lead Plaintiff and Lead Counsel believe they would have been able to develop strong counter arguments during ongoing discovery, even if Lead Plaintiff prevailed at summary judgment and then trial, it is virtually certain that appeals would be taken, which would have, at best, delayed any recovery. *See, e.g., Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery."). At worst, there was of course the possibility that even a favorable verdict could be reversed by the Court or on appeal. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice in securities action); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation).

**(iii) Risks Related to Damages**

Another principal challenge in continuing the litigation was the difficulty of proving damages and overcoming StoneCo's anticipated arguments regarding loss causation. ¶¶81-86.

In order to recover, Lead Plaintiff would need to prove that the allegedly corrective information disclosed by StoneCo on August 25, 2021, August 30, 2021, and November 16, 2021 revealed new information about StoneCo's Credit Product, which caused the price StoneCo's stock to decline, as opposed to the price drops being caused by information unrelated to the alleged misstatements. StoneCo likely would have argued, for example, that the decline on August 25 was not sufficiently statistically significant and that confounding information released during the trading day on November 17, 2021 significantly reduced recoverable damages. ¶81.

Lead Plaintiff's damages expert estimated that maximum damages attributable to all three allegedly corrective disclosures was approximately $2 billion, depending on the trading model and assumptions used. ¶83. However, if the Court held that only the August 30, 2021 allegedly corrective disclosure was actionable, aggregate damages would have decreased to approximately $400 million. ¶84. In addition, there were risks that the Class Period could have been shortened to start much later, in March 2021, which would have reduced aggregate damages to approximately $200 million. Accordingly, the Settlement recovers approximately 1.3% of estimated maximum damages and a range of 6.7% to 13.4% of more likely recoverable estimated damages. ¶85.

Defendant would have put forth well-qualified experts of its own to show that damages were significantly less, if not zero. As courts have long recognized, the substantial uncertainty as to which side's experts might be credited by a jury presents a serious litigation risk. *See Telik,* 576 F. Supp. 2d at 579-80 (in this "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found…").

#### (iv) The Risks of Achieving and Maintaining Class Certification

Lead Plaintiff's motion for class certification was pending, and not fully briefed, when the Parties agreed to settle. ¶¶39, 76. StoneCo had not yet submitted its opposition to Lead Plaintiff's motion. However, Lead Plaintiff anticipated that Defendant would likely raise price impact arguments to attempt to "rebut the presumption" of reliance established in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and therefore defeat class certification by demonstrating, by a preponderance of the evidence, that the class could not rely on the misrepresentations because they did not actually effect, or impact, the market price of StoneCo common stock. ¶77.

Additionally, class certification can be reviewed and modified at any time by a court before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification

may be altered or amended before final judgment.”). The Settlement avoids any uncertainty with respect to class certification and the risks of maintaining certification through trial and on appeal. *See Ebbert v. Nassau Cnty.*, 2011 WL 6826121, at *12 (E.D.N.Y. Dec. 22, 2011) (risk of de-certification of the certified class supported approval of Settlement).

**(b) The Effective Process for Distributing Relief to the Settlement Class**

Rule 23(e)(2)(C)(ii) instructs courts to consider whether the relief provided to the class is adequate in light of the “effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.” Here, the proceeds of the Settlement will be distributed with the assistance of an experienced claims administrator, Verita.[4] The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, class members can submit, either by mail or online using the Claims Administrator’s website, the Court-approved Claim Form. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant’s eligibility to recover by, among other things, calculating their respective “Recognized Claims” based on the Court-approved Plan of Allocation,[5] and ultimately determine each eligible Claimant’s *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶24; Ex. 4-A at ¶¶52-72. Lead Plaintiff’s claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. Stipulation at ¶30(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court. *Id.*

After the Settlement reaches its Effective Date (*id.* at ¶39) and the claims process is completed, Authorized Claimants will be issued payments. If there are unclaimed funds after the

[4] Verita was formerly known as KCC Class Action Services, LLC.

[5] Approval of the Plan of Allocation is discussed in Section II, below.

initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. Thereafter, Lead Plaintiff recommends that any *de minimis* balance that still remains in the Net Settlement Fund, after payment of any outstanding Notice and Administration Expenses, be contributed to the Consumer Federation of America ("CFA"), or such other private, non-profit, non-sectarian 501(c)(3) organization designated by Lead Plaintiff and approved by the Court. *Id*. at ¶27.[6]

**(c) The Requested Attorneys' Fees and Expenses Are Reasonable**

As discussed in the accompanying Fee Memorandum, the requested attorneys' fees of 28% of the Settlement Fund, payable as ordered by the Court, and Litigation Expenses incurred by Lead Counsel are reasonable in light of Lead Counsel's efforts and the risks in the litigation. Most importantly, with respect to the Court's consideration of the fairness of the Settlement, approval of the attorneys' fees request is not part of the Settlement, *i.e.,* neither Lead Plaintiff nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or litigation expenses.

[6] CFA is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests through policy research, advocacy, and education. *See* www.consumerfed.org. With respect to victims of financial fraud, CFA has an Investor Protection program and an Investment Research Center that works nationwide to promote consumer-oriented policies that safeguard investors against fraud through: (i) the development of educational material for investors; (ii) drafting policies and legislation; (iii) and providing testimony and comments on legislation and regulations. www.consumerfed.org/issues/investor-protection. CFA has been approved in numerous securities cases, including *Chen v. Missfresh Limited, et al*., Case No. 22-cv-09836-JSR (S.D.N.Y.) and *ODS Capital LLC v. JA Solar Holdings Co. Ltd. et al.*, No. 18-cv-12083 (S.D.N.Y.).

#### (d) The Relief Provided in the Settlement Is Adequate Taking Into Account all Agreements Related to the Settlement

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. As of August 19, 2025, the Parties executed a settlement Term Sheet, and on October 15, 2025, they executed the Stipulation and the confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement"). The Supplemental Agreement sets forth the conditions under which Defendant has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual payment. *Christine Asia Co. Ltd. v. Yun Ma, et. al*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019). Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and Term Sheet are the only agreements concerning the Settlement entered into by the Parties.

### 4. Application of the Remaining *Grinnell* Factors Supports Approval

#### (a) The Ability of Defendant to Withstand a Greater Judgment

While it is Lead Plaintiff's understanding that StoneCo could withstand a judgment in excess of $26.75 million, courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment when the other factors favor the settlement. *See, e.g., Veeco*, 2007 WL 4115809, at *11 ("this factor alone does not prevent the Court from approving the Settlement where the other Grinnell factors are satisfied").

#### (b) The Reaction of the Settlement Class to Date

The reaction of a class to a proposed settlement is a significant factor to be weighed in

considering its fairness and adequacy. *See, e.g.*, *Bear Stearns*, 909 F. Supp. 2d at 266-67.

Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, Verita, mailed (or emailed) Postcard Notices to potential Settlement Class Members and their nominees. *See* Ex. 4 at ¶¶2-8. As of January 21, 2026, 149,804 copies of the Postcard Notice have been disseminated to potential Settlement Class Members and their nominees. *Id*. at ¶8. In addition, on December 10, 2025 the Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PRNewswire*. *Id*. at ¶9.

While the deadline set by the Court (February 6, 2026) has not yet passed, to date, no objections to the Settlement or Plan of Allocation have been received and no request for exclusion has been received. ¶¶12, 91; Ex. 4 at ¶¶13-14; *see In re Warner Chilcott Ltd. Sec. Litig.*, 2009 WL 2025160, at *2 (S.D.N.Y. July 10, 2009) (no class member objections since preliminary approval supported final approval). As provided in the Preliminary Approval Order, Lead Plaintiff will file its reply papers no later than February 20, 2026 addressing any objections and any requests for exclusion.

#### (c) The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlement

"[A] sufficient factual investigation must have been conducted to afford the Court the opportunity to 'intelligently make … an appraisal of the settlement.'" *Puddu v. 6D Global Tech., Inc*., 2021 WL 1910656, at *4 (S.D.N.Y. May 12, 2021); *see also In re Signet Jewelers*, 2020 WL 4196468, at *7 ("When considering this *Grinnell* factor, the question is whether the parties . . . counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement.").

Here, prior to agreeing to settle, Lead Counsel developed a full understanding of the facts

of the case and merits of the claims through, among other things: (i) conducting an extensive investigation of the claims at issue, including contacting and interviewing former employees of StoneCo, all of whom were in Brazil; (ii) preparing a detailed amended Complaint; (iii) defeating, in part, StoneCo's motion to dismiss the Complaint; (iv) moving for class certification; (v) analyzing over 12,000 pages of documents produced in discovery, many of which required significant translation efforts from Portuguese to English; (viii) engaging consultants concerning Brazilian law and the financial technology sector in Brazil; (ix) engaging and consulting with experts in accounting matters, damages and loss causation; and (x) preparing for and participating in a formal in-person arms' length mediation. *See* Rogers Decl. at §§III.-V.

Armed with this substantial base of knowledge, Lead Plaintiff was in a position to balance the proposed Settlement with a well-educated assessment of the likelihood of overcoming the risks of litigation. The fact that the Parties have not completed discovery does not weigh against approval of the Settlement. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425–26 (S.D.N.Y. 2001) ("To approve a proposed settlement, however, the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make. . . an appraisal of the Settlement."); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

Accordingly, Lead Plaintiff and Lead Counsel respectfully submit that they had "a clear view of the strengths and weaknesses of their case[]" and of the range of possible outcomes at trial. *Tchrs. Ret. Sys. of La. v. A.C.L.N. Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004).

Accordingly, this factor also supports approval.

**(d) The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All the Attendant Risks of Litigation Support Approval of the Settlement**

Courts typically analyze the last two *Grinnell* factors together, "consider[ing] and weigh[ing] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010). Courts agree that the determination of a "reasonable" settlement "is not susceptible [to] a mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Instead, "in any case there is a range of reasonableness with respect to a settlement. . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

As discussed above and in the Rogers Declaration, the Settlement represents approximately 1.3% of estimated maximum damages and a range of 6.7% to 13.4% of likely recoverable estimated damages. While Lead Plaintiff's damages expert, Matthew D. Cain, Ph.D., has estimated that maximum damages attributable to all three corrective disclosures alleged in the Action was approximately $2 billion, depending on the trading model and assumptions used, if only the August 30, 2021 allegedly corrective disclosure was found to be actionable, aggregate damages would decrease to approximately $400 million. ¶¶9, 84; Ex. 3. There were also risks that the Class Period could have been shortened to start in March 2021, which could have reduced aggregate damages to approximately $200 million. *Id*. Courts regularly approve settlements with comparable or lower percentage recoveries than obtained here. *See, e.g.*, *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *12 (E.D.N.Y. Jan. 4, 2024) (settlement representing approximately 1% of maximum damages approved as reasonable); *In re Northern Dynasty Minerals Ltd. Sec. Litig.*, 2023 WL 5511513, at

*10-11 (E.D.N.Y. Aug. 24, 2024) (approving settlement with a recovery of 2.3% of maximum potential damages).

Moreover, the Settlement Amount is above industry trends. According to NERA Economic Research Assoc.'s full-year 2025 report, for securities cases with total NERA-defined investor losses of between $200 million and $399 million, the median percentage of recovery from 2016 to 2025 was 2.7% of estimated losses, and the median percentage of recovery for such cases in 2025 was 1.5%. *See* Edward Flores, Svetlana Starykh & Ivelina Velikova, *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review* (NERA Economic Research Assoc. Jan. 2026), Ex. 5 at 27-28. The $26,750,000 recovery is also more than twice the $12.5 million median recovery in mid-2025, when the Settlement was reached, and significantly more than the $17 million median recovery for all of 2025. *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: H1 2025 Update*, at 2 (NERA Economic Research Associates, Inc. 2025), Ex. 2 at 2; Ex. 5 at 24.

In light of the circumstances before the Court, and all of the delay and uncertainty that would be inherent in continued litigation, the Settlement falls well within the range of possible recovery considered fair, reasonable, and adequate.

## II. THE PROPOSED PLAN OF ALLOCATION FOR THE PROCEEDS OF THE SETTLEMENT TREATS CLASS MEMBERS EQUITABLY AND SHOULD BE APPROVED BY THE COURT

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270. A plan of allocation with a "rational basis" satisfies this requirement. *FLAG Telecom*, 2010 WL 4537550, at *21; *Initial Pub. Offering*, 671 F. Supp. 2d at 497. A plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *See IMAX*, 283 F.R.D. at 192. However, a plan of allocation does not need to be tailored to fit each

and every class member with "mathematical precision." *In re PaineWebber Ltd. P'Ships Litig.*, 171 F.R.D. at 133.

Here, the proposed Plan of Allocation, which was developed by Lead Counsel in consultation with Lead Plaintiff's damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among class members who submit valid claims. The Plan is set forth in full in the long-form Notice. *See* Ex. 4-A at ¶¶52-72. Verita, as the Court-approved Claims Administrator, will determine each Claimant's Recognized Claim, calculated according to the formulas in the Plan of Allocation. The Plan provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on their calculated Recognized Claim. *Id*. at ¶¶54-55. Each *pro rata* share will be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *Id*. at ¶67. The proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of the Settlement among the Settlement Class.

Lead Counsel believes that the proposed Plan provides a fair and reasonable method to equitably allocate the Net Settlement Fund. *See Giant Interactive Grp. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel"). To date, no objections to the proposed plan have been received. ¶99.

## III. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

Lead Plaintiff's Preliminary Approval Motion and motion seeking certification of a class set forth the bases for the certification of the Settlement Class. *See* ECF Nos. 111-114. In connection with the Preliminary Approval Motion, the Court found that the Settlement Class satisfied the requirements of Rule 23(a) and (b)(3) and issued its Order preliminarily certifying a class for settlement purposes. ECF No. 127. Nothing has happened since preliminary approval was granted that would alter the Court's findings. Lead Plaintiff now requests that the Court finally

certify the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), for settlement purposes only, and appoint Lead Plaintiff as Class Representatives and Labaton as Class Counsel. *See Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at *5 (E.D.N.Y. Feb. 16, 2023) (recommending final certification of the settlement class, noting that there had been no objections or opt-outs from class members, and no other material information had emerged that would alter the court's findings since its preliminary approval order).

## IV. NOTICE SATISFIED RULE 23 AND DUE PROCESS

Lead Plaintiff provided the Settlement Class with notice of the proposed Settlement that satisfied all the requirements of Rule 23(e), the PSLRA, and due process. Notice of a settlement must be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," *Wal-Mart Stores*, 396 F.3d at 114—and be the best notice practicable under the circumstances. Fed. R. Civ. P. 23(e). Both the substance of the notice program here and the methods of dissemination satisfied these standards.

The notice program's combination of individually mailed (or emailed if emails are provided) Postcard Notices to all Settlement Class Members who could be identified with reasonable effort, supplemented by the Summary Notice in a widely circulated publication, transmission over a business newswire, and publication on internet websites, satisfied all requirements of Rule 23, due process, and the PSLRA. *See, e.g.*, *In re Grab Holdings Ltd. Sec. Litig.*, 2025 WL 1413515 (S.D.N.Y. May 15, 2025) (approving similar notice program that included mailing or emailing postcard notices to potential class members and nominees followed by publication notice and posting long-notice on a settlement website); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by

courts."). As detailed in the accompanying Mailing Declaration, as of January 21, 2026, 149,804 Postcard Notices have been mailed or emailed to potential Settlement Class Members, brokers, and nominees. *See* Ex. 4 at ¶¶2-8. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire* on December 10, 2025. *Id*. at ¶9. Verita also continues to maintain a dedicated settlement website, www.StoneCoSecuritiesSettlement.com. *Id*. at ¶¶11-12.

Collectively, the forms of notice describe, among other things: (i) the terms of the Settlement and the recovery; (ii) the reasons for the Settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedure for submitting a Claim Form; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Settlement Class; and (vii) the date, time and place of the Settlement Hearing. *See* Ex. 4-A to C.

This combination of individual mailed notice to those who could be identified with reasonable effort, supplemented by publication and internet notice, was "the best notice … practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *12-13 (S.D.N.Y. Dec. 23, 2009).

## **CONCLUSION**

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement, approve the proposed Plan of Allocation, and finally certify the Settlement Class for purposes of the Settlement only. Proposed orders will be submitted with Lead Plaintiff's reply papers, after the deadline for objecting or seeking exclusion has passed.

DATED: January 23, 2026

Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

*/s/ Michael H. Rogers*
Michael P. Canty
Michael H. Rogers
Jacqueline R. Meyers
Stephen Boscolo
Grace T. Harmon
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
mrogers@labaton.com
jmeyers@labaton.com
sboscolo@labaton.com
gharmon@labaton.com

*Counsel for Lead Plaintiff Indiana Public Retirement System and Lead Counsel for the Proposed Settlement Class*

**<u>CERTIFICATION OF WORD-COUNT COMPLIANCE</u>**

The undersigned hereby certifies that the foregoing brief complies with the word limit set forth in Local Civil Rule 7.1(c). The word count, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 7,901 words according to the word-processing system used to prepare the document, less than the 8,750 maximum.

Dated: January 23, 2026

/s/ *Michael H. Rogers*
MICHAEL H. ROGERS

**CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2026, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

Dated: January 23, 2026

/s/ *Michael H. Rogers*
MICHAEL H. ROGERS